## BERRY v MICHIGAN RACING COMMISSIONER

Docket No. 57994. Submitted February 2, 1982, at Detroit.—Decided
    May 5, 1982. Leave to appeal applied for.

Joseph Berry, owner and licensed trainer of harness race horses,
    had his trainer's license suspended after a post-race urinalysis
    revealed the presence of apomorphine in two of his horses. The
    track stewards, after hearings at which Berry's attorney was
    not permitted to participate, issued a 365-day suspension of
    plaintiff's trainer's license for each incident. Following a con-
    tested case hearing pursuant to the Administrative Procedures
    Act, at which the hearing officer determined that apomorphine
    was a drug within the meaning of the racing commissioner's
    general rules and the corresponding statutory provision, the
    suspensions of Berry's license were affirmed by the order of the
    racing commissioner on the basis of the so-called "insurer
    rule", whereby a trainer of a horse insures the condition of the
    horse and bears the responsibility for such condition. Berry
    sought superintending control in Wayne Circuit Court. Thomas
    J. Foley, J., affirmed the order imposing the suspensions. Plain-
    tiff appeals. *Held:*

1. The so-called "insurer rule" is not violative of due process
    in that the rule does not create an unrebuttable presumption
    that the trainer administered any prohibited substance or
    negligently cared for the horse but rather merely makes the
    trainer of the horse the insurer of the horse's. condition. The
    rule does not concern itself with the assignment of fault but
    rather imposes on the trainer, as a condition of his state
    licensure, the responsibility for the horse's condition.

2. The insurer rule is a legitimate exercise of the state's

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 16A Am Jur 2d, Constitutional Law §§ 851, 852.
    29 Am Jur 2d, Evidence §§ 10, 11.
[3] 16A Am Jur 2d, Constitutional Law § 401.
[4] 38 Am Jur 2d, Gambling § 10.
[5] 16A Am Jur 2d, Constitutional Law § 420.
[6] 16A Am Jur 2d, Constitutional Law §§ 813, 827, 829.
[7] 2 Am Jur 2d, Administrative Law § 348.
    16A Am Jur 2d, Constitutional Law § 842.

police power inasmuch as such rule seeks to advance a valid public purpose and provides a remedy which is reasonably related to that public purpose.

3. The fact that the hearing officer cited a statute not contained in the notice of hearing as additional authority for the conclusion that apomorphine is a prohibited drug did not violate plaintiff's due process right to proper notice of hearing, since, even without the support of the statutory authority, there was ample evidence to conclude that apomorphine was a drug prohibited under the rules of the racing commissioner.

4. While the track stewards erred in refusing to permit plaintiff to be represented by counsel before them, such refusal does not vitiate the effect of the subsequent proceedings, since the subsequent hearing, at which plaintiff was permitted to be represented by counsel, was *de novo* in nature.

Affirmed.

1. CONSTITUTIONAL LAW — DUE PROCESS — PRESUMPTIONS.

Due process forbids the adoption of an irrebuttable presumption as to which the presumed fact does not necessarily follow from the proven fact and where the state has a reasonable alternative means of making the crucial determination.

2. CONSTITUTIONAL LAW — DUE PROCESS — HORSE RACING.

The rule of the racing commissioner which makes the trainer of a race horse the insurer of the horse's condition does not create an irrebuttable presumption that the trainer administered any prohibited substance or negligently cared for the horse but rather merely makes the trainer of a horse that is entered in a race the insurer of the horse's condition; the rule does not concern itself with the assigning of fault for the horse's condition but rather requires the trainer, as a condition of his state licensure, to bear the responsibility for the horse's condition (1979 AC, R 431.62[b][7]).

3. CONSTITUTIONAL LAW — DUE PROCESS — GUILTY KNOWLEDGE — POLICE POWERS.

Due process does not require proof of guilty knowledge before punishment can be imposed; where strong police regulation is required, the state may impose the burden of acting at hazard upon a person who is otherwise innocent but who is in a responsible relation to a public danger.

4. ECONOMIC REGULATION — HORSE RACING — POLICE POWERS.

Horse racing, because of its association with legalized gambling,

is an activity requiring strong police regulation to protect the public interest.

5. Economic Regulation — Horse Racing — Police Powers.

The rule of the racing commissioner which makes the trainer of a race horse the insurer of the horse's condition constitutes a proper exercise of police power inasmuch as (1) it seeks to advance a valid public purpose and (2) it provides a remedy that is reasonably related to that public purpose (1979 AC, R 432.62[b][7]).

6. Constitutional Law — Due Process — Notice of Hearing.

The citation of a statutory provision as an additional basis for concluding that a substance was a prohibited drug within the meaning of the rules of the racing commissioner does not deprive a horse trainer of due process even where the notice of hearing did not mention such statute where there was ample evidence from which the hearing officer could conclude that the substance was a drug within the meaning of the rules of the racing commissioner cited in the notice of hearing.

7. Administrative Law — Horse Racing — Representation by Counsel.

A horse trainer charged with a violation of the rules of the racing commissioner is entitled to have legal representation when called to appear before the track stewards; the refusal by track stewards to permit representation by counsel of a horse trainer does not vitiate the effect of all subsequent proceedings since the subsequent hearing before the hearing officer of the office of the racing commissioner is *de novo* in nature.

*Neil H. Fink* and *David S. Steingold,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Charles D. Hackney* and *Theodore S. Klimaszewski,* Assistants Attorney General, for defendant.

Before: N. J. Kaufman, P.J., and V. J. Brennan and Cynar, JJ.

Per Curiam. Plaintiff, an owner and licensed

trainer of harness race horses, appeals as of right from the circuit court's May 22, 1981, order affirming a two-year suspension of plaintiff's trainer's license based on a finding that plaintiff entered to race two horses determined to have apomorphine in their bodies, in violation of the general rules promulgated by the racing commissioner, 1979 AC, R 431.62(b).[1]

Plaintiff was the trainer of record of two horses, namely, "Quick Ideal" and "Miracle Blend". These horses ran in separate races at Northville Downs on February 7, 1981, and February 14, 1981, respectively. Post-race urinalysis of each horse revealed the presence of apomorphine, a derivative of morphine which in horses acts to stimulate the skeletal muscles and locomotor system. On February 19, 1981, and February 26, 1981, the Northville Downs track stewards issued a 365-day suspension of plaintiff's trainer's license for each incident, to run consecutively. The suspensions were based on the insurer rule, MCL 431.71(4); MSA 18.966(41)(4),[2] which makes the trainer abso-

---

[1] 1979 AC, R 431.62(b)(8) provides:

"(8) If the chemical analysis of a sample indicates the presence of a drug or unreported controlled medication, the trainer of the horse and any other person shown to have the care of attendance of the horse or shown to have administered or conspired to have administered the drug or unreported controlled medication is subject to disciplinary action. A trainer or veterinarian who fails to comply with the controlled medication regulations is subject to disciplinary action. The owner of the horse shall not participate in the purse distribution of that race and the horse shall be declared unplaced for every purpose except for pari-mutuel wagering. A trophy received by the owner of the horse shall be returned."

[2] The statute reads:

"(4) A person who is issued an occupational license as a trainer is responsible for and the absolute insurer of the condition of the horses entered to race for the person, corporation, firm, partnership, association, stable, or other legal entity by whom the trainer is employed, except as prescribed by the rules promulgated by the racing commissioner under this act."

See, also, 1979 AC, R 431.62(b)(7).

lutely responsible for the condition of the horses he enters in a race.

On appeal, plaintiff argues that the insurer rule violates the Due Process Clauses of the Michigan and United States Constitutions (1) by creating an irrebuttable presumption of fault and (2) by subjecting to disciplinary action a person not shown to have committed any wrongdoing. The first part of plaintiff's claim may readily be disposed of. Due process forbids the adoption of an irrebuttable presumption as to which the presumed fact does not necessarily follow from the proven fact and where the state has a reasonable alternative means of making the crucial determination. *Cleveland Board of Education v LaFleur,* 414 US 632, 644-645; 94 S Ct 791; 39 L Ed 2d 52 (1974); *Vlandis v Kline,* 412 US 441, 452; 93 S Ct 2230; 37 L Ed 2d 63 (1973). Plaintiff contends that whenever a prohibited substance is found in a horse's system the insurer rule creates an irrebuttable presumption that the trainer of the horse administered the substance or negligently cared for the horse. We disagree. The rule, as its name implies, makes the trainer of a horse that is entered into a race the insurer of that horse's condition. It creates no presumption of trainer fault when the presence of a prohibited substance is found. The rule simply does not concern itself with assigning fault, but instead requires the trainer, as a contingency of being licensed by the state, to bear the responsibility for the horse's condition.[3]

---

[3] The statute may be contrasted with Maryland Racing Commission Rule 146(a) and (d), found to create an irrebuttable presumption of fact in violation of constitutional standards in *Mahoney v Byers,* 187 Md 81; 48 A2d 600 (1946):

"(a) No person shall administer, or knowingly or carelessly permit to be administered to any horse entered for a race, any drug in any way within forty-eight (48) hours before the time of the race.

\* \* \*

"(d) If the Commission finds from analysis of the saliva or urine, or

Plaintiff's alternative contention, that due process is violated by the rule since it subjects a person to disciplinary action without a showing of wrongdoing, is also without merit. Due process does not require proof of guilty knowledge before punishment may be imposed. *United States v Balint,* 258 US 250; 42 S Ct 301; 66 L Ed 604 (1922); *Shevlin-Carpenter Co v Minnesota,* 218 US 57; 30 S Ct 663; 54 L Ed 930 (1910). In areas subject to strong police regulation, the state may impose the burden of acting at hazard upon a person otherwise innocent but standing in a responsible relation to a public danger. *United States v Dotterweich,* 320 US 277, 280-281; 64 S Ct 134; 88 L Ed 48 (1943). In *Dotterweich,* the Supreme Court held that criminal liability for the introduction or delivery into interstate commerce of adulterated or misbranded drugs could attach to a defendant solely because of his position of authority or responsibility as president and general manager of a corporation. More recently, *Dotterweich* was reaffirmed in *United States v Park,* 421 US 658, 672; 95 S Ct 1903; 44 L Ed 2d 489 (1975). The Court wrote:

"Thus *Dotterweich* and the cases which have followed reveal that in providing sanctions which reach and touch the individuals who execute the corporate mission—and this is by no means necessarily confined to a single corporate agent or employee—the Act imposes not only a positive duty to seek out and remedy viola-

blood taken from a horse on the day of a race in which the horse ran, or from other competent evidence, that any drug has been administered to the horse within forty-eight (48) hours before the race, the trainer shall be subject to the penalties prescribed in sub-section (e) hereof, whether or not he administered the drug, or knowingly or carelessly permitted it to be administered. The fact that the analysis shows the presence of a drug shall be conclusive evidence either that there was knowledge of the fact on the part of the trainer or that he was guilty of carelessness in permitting it to be administered."

tions when they occur but also, and primarily, a duty to implement measures that will insure that violations will not occur. The requirements of foresight and vigilance imposed on responsible corporate agents are beyond question demanding, and perhaps onerous, but they are no more stringent than the public has a right to expect of those who voluntarily assume positions of authority in business enterprises whose services and products affect the health and well-being of the public that supports them. *Cf.* Wasserstrom, Strick Liability in the Criminal Law, 12 Stan L Rev 731, 741-745 (1960)." See also *People v DeClerk,* 400 Mich 10, 19-23; 252 NW2d 782 (1977).

A majority of those jurisdictions considering the issue have concluded that horse racing is an activity requiring strong police regulation to protect the public interest. *E.g., Division of Pari-Mutuel Wagering v Caple,* 362 So 2d 1350, 1355 (Fla, 1978); *Dare v State,* 159 NJ Super 533; 388 A2d 984 (1978); *O'Daniel v Ohio State Racing Comm,* 37 Ohio St 2d 87; 307 NE2d 529, 533 (1974); *Sandstrom v California Horse Racing Board,* 31 Cal 2d 401; 189 P2d 17 (1948), *cert den* 335 US 814; 69 S Ct 31; 93 L Ed 369 (1948), but see *Brennan v Illinois Racing Board,* 42 Ill 2d 352; 247 NE2d 881 (1969). As stated in *Dare v State, supra:*

"The danger of clandestine and dishonest activity inherent in the business of horse racing has been well recognized. *Garifine v Monmouth Park Jockey Club,* 29 NJ 47, 55 [148 A2d 1] (1959). The business itself and the legalized gambling which accompanies its activities are strongly affected by a public interest. *State v Garden State Racing Ass'n,* 136 NJL 173, 175 [54 A2d 916] (E & A, 1947). Corruption in horse racing activities is regarded as an affront to a publicly sponsored sport with the potential of far reaching consequences. *State v Sipp,* 149 NJ Super 459, 460 [374 A2d 48] (App Div 1968)." *Dare v State, supra,* 536-537.

We believe that a strong public interest justifying close regulation of horse racing is self-evident. Horse racing is accompanied by legalized gambling, making the activity especially susceptible to fraud and corruption. Strong regulation protects not only the wagering public but also advances the state's economic interests in the racing business by preserving public confidence in the activity.

The trainer of a horse stands in a position of "responsibility and power" to guarantee the condition of the. horse when entered in a race. See *People v DeClerk, supra.* Moreover, the activity of a trainer is one that is voluntarily assumed at the state's permission. Due process would not forbid a complete ban on horse racing as a legalized form of gambling. The imposition of strict liability is reasonable because the trainer is the person best able to prevent illegal drugging. The insurer rule provides maximum protection against illegal drugging; arguably it is the only practical means of reducing such corrupt practices. *Morris v West Virginia Racing Comm,* 133 W Va 179; 55 SE2d 263 (1949). If, as plaintiff proposes, we were to conclude that due process necessitates a finding of guilty knowledge or intent prior to the imposition of sanctions, enforcement of the prohibition on horse drugging would be virtually impossible, and the interests of the public and state would go unprotected. The insurer rule is a reasonable alternative to either leaving those interests unprotected or forbidding legalized racing. Stated alternatively, the insurer rule constitutes a proper exercise of police power inasmuch as (1) it seeks to advance a valid public purpose and (2) it provides a remedy that is reasonably related to that public purpose. *Van Slooten v Larsen,* 86 Mich App 437, 445; 272 NW2d 675 (1978), *aff'd* 410 Mich 21; 299 NW2d 704 (1980).

Plaintiff also argues on appeal that his due process right to notice of the charges against him was violated when the hearing officer for the office of the racing commissioner stated in his conclusions that the use of apomorphine violated an additional statute not mentioned in the initial notice of hearing sent to plaintiff.

The notice of hearing sent to plaintiff on March 5, 1981, provided, in part:

"The aforementioned allegations will be considered at the hearing under the Racing Commissioner's Rules for Harness Racing and General Provisions, including R 431.62(b) Corrupt Practices, Subsections (4), (5), (6), (7), and (8), of the Racing Law of 1980, and the Administrative Procedures Act of 1969, as amended."

The racing commissioner's general rules, 1979 AC, R 431.62(b)(2)(a), define the term drug in the following manner:

"(2) As used in this rule:
"(a) 'Drug' means any medication or metabolic derivative thereof, which is a narcotic, or which could serve as a local anesthetic or tranquilizer, or which could stimulate or depress the circulatory, respiratory or central nervous system of a horse. A horse which has been entered to race shall not carry a drug in its body."

The purpose of the rule is to accomplish the prohibition or control of drugs and medications which could affect the racing condition or performance of a horse. 1979 AC, R 431.62(b)(1). Here, the racing commission hearing officer concluded that apomorphine "is a stimulant, which stimulates the nervous system of a horse and could affect the racing condition of a horse". Thus, the hearing officer determined that the presence of the drug violated the racing commissioner's general rules as cited in

the notice of hearing sent to plaintiff. The hearing officer also made reference to MCL 431.83; MSA 18.966(53),[4] concluding that it also prohibited the use of apomorphine. The basis of plaintiff's appellate argument is that he was actually found culpable for violating the statutory provision, which he had no notice would be considered.[5]

After reviewing carefully the record of the proceedings before the hearing officer, we conclude that plaintiff's claim is without merit. We believe the hearing officer's reference to MCL 431.83; MSA 18.966(53) was a superfluous conclusion made after he had determined that the racing commissioner's rule prohibited the use of apomorphine. The refer-

---

[4] MCL 431.83; MSA 18.966(53), a direct statutory prohibition of administration of drugs to race horses, contains a more broad definition of the term "drug":

"(3) As used in this section, 'drug' means any of the following:

"(a) A substance recognized or for which the standards or specifications are prescribed in the United States pharmacopoeia-national formulary, homeopathic pharmacopoeia of the United States, or any supplements.

"(b) A substance intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans or other animals.

"(c) A substance, other than food, intended to affect the structure of any function of the body of humans or other animals.

"(d) A substance intended for use as a component of a substance specified in subdivision (a), (b), or (c)."

[5] The Administrative Procedures Act, MCL 24.271; MSA 3.560(171) provides for notice to a party appearing before an administrative body:

"(2) The parties shall be given a reasonable notice of the hearing, which notice shall include:

"(a) A statement of the date, hour, place and nature of the hearing. Unless otherwise specified in the notice the hearing shall be held at the principal office of the agency.

"(b) A statement of the legal authority and jurisdiction under which the hearing is to be held.

"(c) A reference to the particular sections of the statutes and rules involved.

"(d) A short and plain statement of the matters asserted. If the agency or other party is unable to state the matters in detail at the time the notice is given, the initial notice may state the issues involved. Thereafter on application the agency or other party shall furnish a more definite and detailed statement on the issues."

ence was not essential to the ultimate conclusion made that plaintiff was absolutely responsible for a violation of the racing commissioner's rule. Moreover, we disagree with plaintiff's contention that the evidence produced at the hearing failed to prove that apomorphine is a "drug" as defined by the rule. Dr. John R. Keating, D.V.M., testified that apomorphine was a morphine derivative that affected horses, although unpredictably so, as a stimulant. He indicated that it was a locomotor stimulant, stimulating the skeletal muscles and allowing a horse to run with more power. Dr. Kenneth Gallagher, D.V.M., testified in a consistent manner, indicating that the drug was not FDA approved for horses and that it acted to stimulate the locomotor systems, the muscles and nerves. Further, the text of an article[6] entered as an exhibit at the hearing stated that, particularly in horses, apomorphine is a powerful locomotor stimulant. Quite clearly, apomorphine fits the definition of those drugs sought to be prohibited by the racing commissioner rule. Plaintiff was provided with direct and sufficient notice of the commissioner's reliance on the rule.

Plaintiff's final appellate claim is that he was denied the right to legal representation when he initially appeared before the track stewards, in violation of statute and due process standards. The racing commissioner's general rules, 1979 AC, R 431.63(c), provide that a licensee is entitled to representation at *any* hearing. When plaintiff appeared before the track stewards with an attorney he was told that counsel could remain present but could not participate.[7] While we agree that the

---

[6] Tobin, Combie & Shults, *Pharmacology Review: Actions of Central Stimulant Drugs in the Horse II,* 3 Journal of Equine Medicine & Surgery 102 (March, 1979).

[7] The stewards apparently believed the limitation could be made in

stewards clearly erred in suppressing counsel's participation, we do not believe that the error necessitates reversal and reinstitution of proceedings against plaintiff. Plaintiff was subsequently afforded a full *de novo* hearing before a hearing officer for the office of the racing commissioner, at which counsel participated, and where he was permitted to introduce evidence on plaintiff's behalf. The requisites of due process were thus complied with.

Affirmed.

---

order to prevent a "shouting match" and, thereby, retain control over the proceedings.