McILMURRAY v MICHIGAN RACING COMMISSIONER

McMULLEN v MICHIGAN RACING COMMISSIONER

Docket Nos. 64215, 64814. Submitted March 1, 1983, at Lansing.— Decided November 7, 1983. Leave to appeal applied for.

Waldo McIlmurray is the trainer of two harness race horses which ran and placed in separate pari-mutuel races at Wolverine Harness Raceway in April, 1981. A post-race urinalysis of each horse revealed the presence of methenamine, a urinary tract disinfectant. At a hearing before the raceway stewards, McIlmurray admitted that the drug had been administered to both horses prior to the races. The stewards imposed fines of $200 for each horse and ordered redistribution of the purses. McIlmurray appealed to the Michigan Racing Commissioner who affirmed the stewards' decision. McIlmurray then appealed to the Ingham Circuit Court which affirmed, Jack W. Warren, J. Steven McMullen is the trainer of a harness race horse which ran and placed in a race at Wolverine Harness Raceway in May, 1981. A post-race urinalysis revealed the presence of phenothiazine, an animal worming medication, and, as a result, the track stewards revoked McMullen's license for 30 days and ordered redistribution of the purse. McMullen appealed to the Michigan Racing Commissioner who reinstated McMullen's license, imposed a $200 fine, and affirmed the stewards' order redistributing the purse. McMullen appealed to the Ingham Circuit Court which affirmed, James T. Kallman, J. McIlmurray and McMullen appeal from the orders affirming the Racing Commissioner, contending that neither methenamine nor phenothiazine constitute prohibited drugs under the rules

REFERENCES FOR POINTS IN HEADNOTES
[1] 1 Am Jur 2d, Administrative Law §§ 69, 73.
[2-9, 12] 1 Am Jur 2d, Administrative Law § 92 et seq.
  2 Am Jur 2d, Administrative Law § 277 et seq.
  25 Am Jur 2d, Drugs, Narcotics, and Poisons § 7.
[10] 73 Am Jur 2d, Statutes § 257.
[11] 2 Am Jur 2d, Administrative Law §§ 310, 311.

and regulations of the Racing Commissioner. The cases were consolidated for purposes of appeal. *Held:*

1. Both methenamine and phenothiazine constitute drugs as that term is defined in the Racing Law of 1980.

2. The Racing Law of 1980 absolutely prohibits the use in horses of drugs that are stimulants or depressants during their participation in a race. Other drugs are prohibited unless authorized by the Racing Commissioner. The Racing Commissioner has not yet promulgated rules and regulations specifying the conditions under which authorized substances may be administered. Neither McIlmurray nor McMullen obtained permission from the commissioner to administer the drugs found in their horses.

3. The Racing Commissioner was acting within his authority when he imposed the fines on McIlmurray and McMullen for the administration of drugs prohibited under the 1980 act.

4. The Racing Commissioner was acting within the scope of his authority in ordering the redistribution of the purses.

Affirmed.

BRONSON, J., dissented. He does not believe that the definition of the term "drug" set forth in the Racing Law of 1980 must be read as conflicting with, or having superseded, that previously established by administrative regulation pursuant to the Racing Law of 1959. He noted that the regulations promulgated pursuant to the Racing Law of 1959 excluded substances which were neither stimulants nor depressants from the definition of impermissible "drugs". It is his view that the rules promulgated pursuant to the Racing Law of 1959 continue in effect until expressly amended or rescinded and that such rules have not been impaired by the passage of § 23 of the Racing Law of 1980 and, therefore, remain in full force. He noted that the broadened definition of "drug" contained in § 23 of the Racing Law of 1980 is specifically limited to § 23. He believes that the amendment of § 23 served to eliminate any doubt that the Legislature intended to confer upon the Racing Commissioner the authority to regulate non-narcotic substances having some effect on the structure or bodily functions of race horses by means of supplementary regulations. He believes that the Legislature thereby made it clear that it had delegated additional regulatory authority and that it did not manifest any intention to exercise that authority directly by means of any statutory amendment of pre-existing rules. He would reverse and direct the commissioner to apply the rules promulgated pursuant to the Racing Law of 1959 to these cases.

Oᴘɪɴɪᴏɴ ᴏғ ᴛʜᴇ Cᴏᴜʀᴛ

1. Aᴅᴍɪɴɪsᴛʀᴀᴛɪᴠᴇ Lᴀᴡ — Pᴏᴡᴇʀ — Aᴜᴛʜᴏʀɪᴛʏ.

   A state agency has no inherent power; any authority a state agency has must come from the Legislature.

2. Hᴏʀsᴇ Rᴀᴄɪɴɢ — Rᴀᴄɪɴɢ Lᴀᴡ ᴏғ 1959 — Pʀᴏʜɪʙɪᴛᴇᴅ Sᴜʙsᴛᴀɴᴄᴇs — Aᴅᴍɪɴɪsᴛʀᴀᴛɪᴠᴇ Lᴀᴡ — Aᴅᴍɪɴɪsᴛʀᴀᴛɪᴠᴇ Cᴏᴅᴇ.

   The Michigan Racing Law of 1959 specifically prohibited the administration of any hypnotic, narcotic, stimulant or depressant to a racing horse within a period of 24 hours prior to a race in which that horse was entered; pursuant to the 1959 act, the Racing Commissioner promulgated rules which further proscribed the administration of narcotic-based anesthetics, hypnotics, stimulants or depressants (MCL 431.48; MSA 18.966[18]; 1979 AC, R 431.62).

3. Hᴏʀsᴇ Rᴀᴄɪɴɢ — Rᴀᴄɪɴɢ Lᴀᴡ ᴏғ 1980 — Rᴀᴄɪɴɢ Lᴀᴡ ᴏғ 1959 — Pʀᴏʜɪʙɪᴛᴇᴅ Sᴜʙsᴛᴀɴᴄᴇs.

   The Racing Law of 1980, which superseded the Racing Law of 1959, considerably expanded the category of substances which may not be administered to horses prior to their entry in a race (MCL 431.31 et seq., 431.61 et seq.; MSA 18.966[1] et seq., 18.966[31] et seq.).

4. Hᴏʀsᴇ Rᴀᴄɪɴɢ — Rᴀᴄɪɴɢ Lᴀᴡ ᴏғ 1980 — Pʀᴏʜɪʙɪᴛᴇᴅ Sᴜʙsᴛᴀɴᴄᴇs — Dʀᴜɢs.

   The Racing Law of 1980 prohibits the presence of drugs in horses during their participation in a race, except under limited circumstances; drugs that are stimulants or depressants are absolutely prohibited, other drugs are prohibited unless authorized by the Racing Commissioner; the term "drug" includes all substances intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in humans or other animals (MCL 431.83; MSA 18.966[53]).

5. Hᴏʀsᴇ Rᴀᴄɪɴɢ — Rᴀᴄɪɴɢ Lᴀᴡ ᴏғ 1980 — Pʀᴏʜɪʙɪᴛᴇᴅ Sᴜʙsᴛᴀɴᴄᴇs — Dʀᴜɢs.

   Both methenamine and phenothiazine are drugs for purposes of the statutory prohibition against the presence of drugs in horses during their participation in a race (MCL 431.83; MSA 18.966[53]).

6. Hᴏʀsᴇ Rᴀᴄɪɴɢ — Rᴀᴄɪɴɢ Lᴀᴡ ᴏғ 1980 — Rᴀᴄɪɴɢ Cᴏᴍᴍɪssɪᴏɴᴇʀ — Pᴇɴᴀʟᴛɪᴇs.

   The Racing Law of 1980 specifically authorizes the Racing Commissioner to assess a penalty, including a fine of not more than

$5,000, for violation of the 1980 act or rules promulgated thereunder (MCL 431.66[3]; MSA 18.966[36][3]).

7. Hᴏʀsᴇ Rᴀᴄɪɴɢ — Rᴀᴄɪɴɢ Lᴀᴡ ᴏꜰ 1980 — Hᴏʀsᴇ Tʀᴀɪɴᴇʀs.

The Racing Law of 1980 provides that horse trainers are responsible for and are the absolute insurers of the condition of their horses entered into a race (MCL 431.71[4]; MSA 18.966[41][4]).

8. Hᴏʀsᴇ Rᴀᴄɪɴɢ — Rᴀᴄɪɴɢ Cᴏᴍᴍɪssɪᴏɴᴇʀ — Dʀᴜɢ Vɪᴏʟᴀᴛɪᴏɴs — Rᴇᴅɪsᴛʀɪʙᴜᴛɪᴏɴ ᴏꜰ Pᴜʀsᴇ.

The Racing Commissioner is empowered to order the redistribution of the purse resulting from a horse race in which a horse sharing in the purse was found to have violated the statutory prohibition against the presence of drugs in horses during their participation in a race as an incidental power necessary to the enforcement of the legislative intent of the Racing Law of 1980 in broadening the proscriptions against substances administered to racing horses just prior to races (MCL 431.62, 431.66, 431.83; MSA 18.966[32], 18.966[36], 18.966[53]).

Dɪssᴇɴᴛ ʙʏ Bʀᴏɴsᴏɴ, J.

9. Hᴏʀsᴇ Rᴀᴄɪɴɢ — Aᴅᴍɪɴɪsᴛʀᴀᴛɪᴠᴇ Lᴀᴡ — Dʀᴜɢs — Rᴀᴄɪɴɢ Lᴀᴡ ᴏꜰ 1959.

*Substances which are neither stimulants nor depressants are excluded from the definition of impermissible "drugs" under regulations promulgated by the Racing Commissioner pursuant to the Racing Law of 1959 (MCL 431.31 et seq.; MSA 18.966[1] et seq.; 1979 AC, R 431.62).*

10. Hᴏʀsᴇ Rᴀᴄɪɴɢ — Wᴏʀᴅs ᴀɴᴅ Pʜʀᴀsᴇs — Aᴅᴍɪɴɪsᴛʀᴀᴛɪᴠᴇ Lᴀᴡ — Rᴀᴄɪɴɢ Lᴀᴡ ᴏꜰ 1980 — Rᴀᴄɪɴɢ Lᴀᴡ ᴏꜰ 1959 — Dʀᴜɢs.

*The broadened definition of "drug" contained in the section of the Racing Law of 1980 pertaining to the presence of drugs in horses applies only to that section itself, and not to the pre-existing rules promulgated pursuant to the Racing Law of 1959 defining impermissible "drugs" (MCL 24.232[1], 431.31 et seq., 431.83[3]; MSA 3.560[132][1], 18.966[1] et seq., 18.966[53][3]; 1979 AC, R 431.62).*

11. Aᴅᴍɪɴɪsᴛʀᴀᴛɪᴠᴇ Lᴀᴡ — Aᴍᴇɴᴅᴍᴇɴᴛ ᴏꜰ Rᴜʟᴇs.

*A statute which is intended to amend a rule previously promulgated by an administrative agency must do so explicitly.*

12. Hᴏʀsᴇ Rᴀᴄɪɴɢ — Aᴅᴍɪɴɪsᴛʀᴀᴛɪᴠᴇ Lᴀᴡ — Dʀᴜɢs — Rᴀᴄɪɴɢ Lᴀᴡ ᴏꜰ 1959 — Rᴀᴄɪɴɢ Lᴀᴡ ᴏꜰ 1980.

*The rules governing the use of medications, and defining the term*

*"drug", promulgated pursuant to the Racing Law of 1959
continue in effect until expressly amended or rescinded, either
by statute or subsequent regulation; the broadened definition of
"drug" contained in the section of the Racing Law of 1980
pertaining to the presence of drugs in horses is intended to
confer upon the Racing Commissioner the additional authority
to regulate, should he see fit to do so, by means of supplemen-
tary regulations, the use of substances which are not stimu-
lants or depressants, but which could nonetheless have some
effect on the structure or bodily functions of race horses, and is
not a manifestation by the Legislature of any intention to
exercise such additional regulatory authority directly, by
means of any statutory amendment of the pre-existing rules
(MCL 24.231[2], 431.31 et seq., 431.83[3]; MSA 3.560[131][2],
18.966[1] et seq., 18.966[53][3]; 1979 AC, R 431.62).*

*Charles A. Palmer,* for Waldo McIlmurray and
Steven McMullen.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, and *Charles D. Hackney*
and *Theodore S. Klimaszewski,* Assistants Attor-
ney General, for defendant.

Before: R. B. BURNS, P.J., and BRONSON and R. E.
ROBINSON,* JJ.

R. B. BURNS, P.J. A single issue is presented by
these two cases consolidated for purposes of appeal
only. The cases arise out of different, though simi-
lar, factual circumstances.

McIlmurray is the trainer of two harness race
horses, "Leader's Demon" and "Happy Sharon".
These horses ran and placed in separate pari-mu-
tuel races at Wolverine Harness Raceway on April
8, 1981, and April 11, 1981. Post-race urinalysis of
each horse revealed the presence of methenamine,
a urinary tract disinfectant.

---

* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

At a hearing before the Wolverine Harness Raceway stewards on April 17, 1981, McIlmurray admitted that methenamine had been administered to both horses prior to the races. The stewards imposed fines of $200 for each horse and ordered redistribution of the purses. McIlmurray appealed to the Michigan Racing Commissioner who, on August 21, 1981, affirmed the stewards' decision. McIlmurray then appealed to the Ingham County Circuit Court, which affirmed the commissioner.

Steven McMullen is the trainer of a race horse, "Varrick". On May 2, 1981, McMullen asked Dr. Keeran, a veterinarian, to administer phenothiazine to the horse, which he did. Phenothiazine is an animal worming medication. On May 4, 1981, Varrick raced in the fifth race at Wolverine Harness Raceway and placed first. However, a post-race urinalysis revealed the presence of phenothiazine and, as a result, the stewards revoked McMullen's license for 30 days and ordered redistribution of the purse.

McMullen appealed to the Michigan Racing Commissioner and at a hearing conducted June 17, 1981, evidence was introduced establishing that phenothiazine is not a stimulant, depressant, local anesthetic or tranquilizer and that the medication will not affect the racing condition of a horse. The commissioner found that phenothiazine does have a reasonable therapeutic purpose, that being the removal of parasites from the body of the horse.

By order of February 18, 1981, the commissioner reinstated McMullen's license and instead imposed a $200 fine. The commissioner, however, affirmed the stewards' order redistributing the purse on the grounds that phenothiazine is an unauthorized drug. McMullen appealed to the Ingham County Circuit Court, which affirmed.

Both McIlmurray and McMullen appeal the circuit court orders affirming the Michigan Racing Commissioner, contending that neither methenamine nor phenothiazine constitute prohibited drugs under the rules and regulations of the Michigan Racing Commissioner.

The question here is whether the Michigan Racing Commissioner acted within the scope of his authority in imposing fines on each of the appellants and in ordering redistribution of the purses won by the appellants' horses. Since a state agency has no inherent power, and since any authority it has must come from the Legislature, *Blue Cross & Blue Shield of Michigan v Ins Comm'r*, 403 Mich 399; 270 NW2d 845 (1978), this Court must look to relevant statutory and administrative law in resolving the present issue.

The Michigan Racing Law of 1959, MCL 431.31 *et seq.;* MSA 18.966(1) *et seq.,* specifically prohibited the administration of "any hypnotic, narcotic, stimulant or depressant" to a racing horse within a period of 24 hours prior to a race in which that horse was entered. MCL 431.48; MSA 18.966(18). Pursuant to the 1959 act, the Michigan Racing Commissioner promulgated rules which further proscribed the administration of narcotic-based anesthetics, hypnotics, stimulants or depressants. 1979 AC, R 431.62.

Today, the Racing Law of 1959 has been superseded by the Racing Law of 1980, MCL 431.61 *et seq.;* MSA 18.966(31) *et seq.,* which considerably expands the category of substances which may not be administered to horses prior to their entry in a race. Under the new act, the administration of all substances used in the diagnosis, cure, mitigation, treatment or prevention of disease in humans or other animals is prohibited unless otherwise au-

thorized by the Racing Commissioner. MCL 431.83; MSA 18.966(53). Both methenamine and phenothiazine constitute drugs as that term is statutorily defined. The Michigan Racing Commissioner has been directed to promulgate rules and regulations specifying the conditions under which some substances may be administered. Such rules have not yet been promulgated.

Section 6(3) of the 1980 act, MCL 431.66(3); MSA 18.966(36)(3), specifically authorizes the Racing Commissioner to assess a penalty, including a fine of not more than $5,000, for violations of the 1980 act or rules promulgated thereunder. Thus, without even looking at administrative rule 431.62, the Racing Commissioner's imposition of fines against these plaintiffs is authorized under the 1980 act if it can be found that plaintiffs violated any provision of the 1980 act.

Section 23 of the 1980 act, MCL 431.83; MSA 18.966(53), prohibits the presence of drugs in horses during their participation in a race, except under limited circumstances. Drugs that are stimulants or depressants are absolutely prohibited. Other drugs are prohibited unless authorized by the Racing Commissioner. The term "drug" includes all substances intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in humans or other animals. All parties agree that both methenamine and phenothiazine constitute a drug under the Racing Law of 1980 and that neither McIlmurray nor McMullen obtained permission from the Racing Commissioner to administer the drugs found in their horses immediately after each race.

Section 11 of the 1980 act, MCL 431.71(4); MSA 18.966(41)(4), provides that trainers are responsible for and the absolute insurers of the condition of

their horses entered into a race. This provision has been upheld as constitutional by a panel of this Court in *Berry v Michigan Racing Comm'r,* 116 Mich App 164; 321 NW2d 880 (1982). Both McIlmurray and McMullen are trainers.

Thus, under MCL 431.83; MSA 18.966(53), the Racing Commissioner was acting within his authority when he imposed fines on plaintiffs for the administration of drugs prohibited under the 1980 act.

A question remains as to whether the commissioner was also acting within the scope of his authority in ordering redistribution of the purses. The answer is not straightforward.

As already discussed, § 6 of the Racing Law of 1980, MCL 431.66; MSA 18.966(36), authorizes the Racing Commissioner to impose a fine on trainers (among others) for violation of any provisions of the 1980 act. Section 6 specifically provides: "the racing commissioner may assess a *penalty,* including a fine * * *". (Emphasis added.) The term "penalty" is not defined in the act. However, § 2 of the act, MCL 431.62; MSA 18.966(32), provides that "[t]he racing commissioner shall have the powers and duties prescribed in this act and shall have the responsibility for administering the provisions of this act relating to licensing, *enforcement,* and regulation". (Emphasis added.)

In our opinion, the Racing Commissioner's power to order purse redistribution is an incidental power necessary to the enforcement of the legislative intent in broadening the proscriptions against substances administered to racing horses just prior to races.

Affirmed.

R. E. ROBINSON, J., concurred.

BRONSON, J. *(dissenting).* I respectfully dissent. It is true that § 23 of the amended statute, MCL 431.83(3); MSA 18.966(53)(3), contains a broadened definition of the term "drug". However, I do not believe that the definition set forth in that section must be read as conflicting with, or having superseded, that previously established by administrative regulation.

Under regulations promulgated pursuant to the Racing Law of 1959, substances which are neither stimulants nor depressants were excluded from the definition of impermissible "drugs". The permissibility of administering certain non-narcotic medications similar to those involved here, methenamine and phenothiazine, has been well established. 1979 AC, R 431.62(2)(b). The amended § 23 defines the term "drug" to include substances other than stimulants or depressants, but under the Administrative Procedures Act (APA) the broadened definition does not automatically apply to existing regulations, nor does it necessarily supersede those regulations:

"Definitions of words and phrases * * * prescribed in any statute, *and which are made applicable to all statutes of this state,* also apply to rules *unless clearly indicated to the contrary."* MCL 24.232(1); MSA 3.560(132)(1). (Emphasis added.)

The prerequisites have not been met for applying a statutory definition to administrative rules. The definition in question, that of the word "drug", is clearly not "applicable to all statutes of this state", as required above. In fact, it is not even applicable to all sections of the amended Racing Law of 1980, but instead is specifically limited to § 23:

"*As used in this section,* 'drug' means any of the following * * *." MCL 431.83(3); MSA 18.966(53)(3). (Emphasis added.)

It is apparent that under the APA, the broadened definition applies only to the section itself, and not to the pre-existing rules.

Defendant relies heavily on a different section of the APA:

"A rule may be amended or rescinded by another rule which constitutes the whole or a part of a filing of rules or as a result of an act of the legislature." MCL 24.231(5); MSA 3.560(131)(5).

According to defendant, the Legislature's adoption of a broadened definition of "drug" in § 23 manifested an intention to amend or supersede existing rules defining that term. I disagree.

This Court has clearly held that if a statute is intended to amend a previously promulgated rule, it must do so explicitly. See *Henderson v Memphis Community School Dist,* 57 Mich App 770, 775; 226 NW2d 725 (1975). In my opinion, the existing rules governing the use of medications (and defining the term "drug") continue in effect until expressly amended or rescinded, either by statute or subsequent regulation. MCL 24.231(2); MSA 3.560(131)(2).

I find it difficult to believe that the Legislature intended the result which follows from the majority's decision to read § 23 as having superseded pre-existing regulations. Under the majority's reading of the section, the use of all substances "other than food" which could "affect * * * any function of * * *" a horse (including medications whose acceptability has long been established) was abruptly prohibited, as of the effective date of the

statute. The status of such non-narcotic substances as those involved in the present appeal has been thrown completely into limbo, until such time that defendant sees fit to promulgate detailed new rules governing the use of all conceivable substances which could fall within the foregoing broad definition of "drug".

Under the majority's interpretation of the new section, this state's racing industry is faced with a whole new array of uncertainties: not only the question of which substances will be rendered permissible under newly promulgated rules, but the more fundamental question of whether (let alone when) defendant may see fit to promulgate new rules.

The horse racing industry now faces a potential for arbitrary and capricious administration of discipline for "violations" of the amended section. This follows from the fact that if existing regulations have been superseded without having been re-promulgated, there are no standards to guide defendant in determining (1) which substances constitute impermissible "drugs", and (2) which penalties are appropriate for each substance.

I believe that the amended section should be read as an effort to affirm defendant's jurisdiction to regulate the use of substances which are not stimulants or depressants, but which could nonetheless have some effect on the structure or bodily functions of race horses. The amendment served to eliminate any doubt that the Legislature intended to confer upon defendant the authority to regulate such non-narcotic substances, should defendant see fit to do so, by means of supplementary regulations. The Legislature thereby made it clear that it had delegated additional regulatory authority; it did not manifest any intention to exercise that

authority directly, by means of any statutory amendment of pre-existing rules.

Absent some express statement indicating an intention to amend or rescind defendant's existing rules, I find no basis for any conclusion that those rules have been impaired by passage of the amended section. *Henderson, supra.* I would hold that the rules previously promulgated by defendant remain in force, and I would issue an order reversing the trial court's decision and directing defendant to apply those rules in determining whether plaintiffs acted properly in administering the substances in question to their respective horses.