843 F.2d 1391
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 No. 87-1158.
 
 Herbert M. FRIEDMAN, Plaintiff-Appellant,
v.
Patrick HALL; Joseph Kennedy; James Wright; and Frank
Meharg, Defendants-Appellees.
 United States Court of Appeals, Sixth Circuit.
 April 11, 1988.
 Before KEITH, WELLFORD and DAVID A. NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff sued defendants Hall, Kennedy and Meharg in their capacity as racing stewards at the 1982 Saginaw Valley Downs race meeting. Friedman, a veterinarian, claims that the three racing stewards, along with defendant Wright, a racing supervisor, acted separately and in conspiracy with each other to deprive him of his constitutional rights under color of state law because of his Jewish faith in suspending his occupational license and suspending him as a horse owner in Michigan harness racing and in denying him the use and privileges of certain Michigan racetracks from July 7, 1982 through December 31, 1982.[1]
 
 
 2
 The acts of the defendants, of which Friedman complains, were the result of a charge against Friedman by a horse trainer, Linda Droscha, that she had witnessed him enter the paddock area at Saginaw Valley Downs on June 9, 1982 and examine a horse entered to race that evening. In addition, Droscha alleged that she observed Friedman give a syringe filled with white cloudy fluid to the horse's owner, who went behind the horse briefly and then returned the empty syringe to Friedman. She communicated her allegations to a State investigator, who in turn notified the stewards.
 
 
 3
 On June 10, Friedman was advised by the stewards that a hearing would be conducted to determine whether Friedman had in fact committed any violations of the Michigan Racing Law, M.S.A. Sec. 18.966(31) et al. or the Rules of the Racing Commissioner promulgated pursuant thereto. The Rules, in pertinent part, provide:
 
 
 4
 Admission to paddock-- ... No person shall be admitted to the paddock or receiving barn except the owners, trainers, drivers and grooms of the horses actually competing in the races of the particular day or night, and such other persons as are specifically authorized by the commission....
 
 
 5
 M.S.A. Sec. 18.966(54) prescribes as a misdemeanor the possession of a syringe in an area where horses are kept at a racetrack. Rule 431.62(b) regulates controlled medications administered to horses and provides for disciplinary action against a veterinarian who does not comply with its provisions.
 
 
 6
 A hearing was conducted, and defendant Wright was present throughout both days. He both questioned a witness and offered commentary regarding two warnings previously received by Friedman for conduct similar to his alleged actions of June 9, 1982. It is uncertain, however, whether Wright was ever called or sworn as a witness.
 
 
 7
 Friedman was advised at the commencement of the hearing of his right to counsel, but he now contends he was told he would not need an attorney. He was allowed to cross examine witnesses and to call his own witnesses to testify. He admitted during the course of the proceedings that he had been in the paddock area in violation of the rules, but argued that his conduct was justified by an urgent situation requiring his professional skills. He denied having given the horse's owner a syringe.
 
 
 8
 The stewards' ruling found Friedman to have violated Rule 431.34(d)(59) and suspended his license and use and privilege of racetracks in Michigan under the supervision of the Racing Commissioner. After a de novo hearing, the deputy racing commissioner, Conley, set aside the stewards' decision, holding that no clear policy existed regarding emergency treatment of animals nor what constituted "paddock area." He intimated that the stewards had selectively and arbitrarily enforced the rules and regulations against Friedman. Conley's opinion was thereafter adopted by the Racing Commissioner just ten days before the license suspension was to have ended. Friedman's previous request for a stay of the stewards' ruling had been denied by the Racing Commissioner.
 
 
 9
 Defendants filed a motion to dismiss or for summary judgment more than a year after the complaint was filed in this cause. Defendants argued both that they were immune from suit and that the complaint failed to state a claim upon which relief could be granted. In support of the motion, the defendants submitted affidavits, attesting to their good faith in suspending Friedman's license and to their lack of knowledge that Friedman was Jewish. All four defendants attested to Wright's lack of participation in the decision making.
 
 
 10
 Friedman's response to the motion was never filed in court but was apparently sent directly to the district court and is before us by stipulation. In his response, Friedman argued the legal issue of immunity and then disputed defendants' motion to dismiss by arguing that the motion was inappropriate on the "dawn of trial" without consideration of all matters adduced in discovery. Friedman filed no evidence in support of his response, and specifically, he failed to file the transcript of the deposition of Conley, although the deposition had been taken almost two months before. Friedman made brief references to his own deposition testimony.
 
 
 11
 Friedman also filed a motion to amend his complaint, but he attached no copy of the proposed amendment, simply averring that an amendment was needed to conform the pleadings to unspecified evidence obtained during discovery. That motion was never pursued nor acted upon.
 
 
 12
 Judge Zatkoff granted summary judgment to the defendants finding the three stewards to be immune from suit because of their quasi-judicial function. He noted their neutrality, their need to be free from harassment, and the procedural safeguards involved in the procedures afforded for Friedman's benefit. Finally, he noted the strong public interest in the strict regulation of horse racing, citing Berry v. Racing Commissioner, 116 Mich.App. 164 (1982). He also determined defendant Wright to be immune from suit as a witness under Briscoe v. LaHue, 460 U.S. 325 (1983).
 
 
 13
 Friedman requested, pursuant to Fed.R.App.P. 10(e), that this court allow him to supplement the joint appendix to include the Conley deposition transcript which was never filed in district court, and this request was granted so that Friedman would not suffer from his trial counsel's asserted incompetency in failing to follow the necessary procedures. Friedman obtained new counsel for appeal purposes.
 
 
 14
 We do not consider the Conley transcript, however, in reaching a disposition of this appeal. The purpose of Rule 10(e) is to supplement the record to accurately reflect what was before the district court. S & E Shipping Corp. v. Chesapeake & Ohio Railway Co., 678 F.2d 636, 641-42 (6th Cir.1982). Failure to adhere to this principle would impair the "policy of fostering judicial efficiency" and would result in prejudice to litigants who have a right to rely on the record made in the district court.[2]
 
 
 15
 The factors to be considered in determining whether an official is entitled to quasi-judicial immunity have recently been articulated:
 
 
 16
 (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.
 
 
 17
 Cleavinger v. Saxner, 474 U.S. 193, 202 (1985) (citing Butz v. Economou, 438 U.S. 478, 512 (1978)). The doctrine focuses not upon the official's status but upon his functional capacities. Manion v. Michigan Bd. of Medicine, 765 F.2d 590, 593 (6th Cir.1985). Persons such as judges, prosecutors acting in their adversarial capacity, and witnesses are absolutely immune from a civil rights suit for damages. Pierson v. Ray, 386 U.S. 547 (1967); Imbler v. Pachtman, 424 U.S. 904 (1976); Briscoe v. LaHue, 460 U.S. 325 (1983).
 
 
 18
 Defendant stewards have the burden of showing that public policy mandates their absolute rather than merely qualified immunity. Butz, 438 U.S. at 506. In Cleavinger, the Court recognized the public's need for effective prison discipline, but found that the committee members' function was not a " 'classic' adjudicatory one" because their decision making involved resolution of credibility conflicts between prisoners and fellow employees and because they were direct subordinates of the warden who reviewed their decisions. The fact that the committee did determine guilt or innocence, hear testimony and receive documentary evidence, evaluate credibility and weigh evidence and render decisions was insufficient to overcome this "relationship between the keeper and the kept." 474 U.S. at 204. Friedman makes no specific argument regarding Wright's function as a witness.
 
 
 19
 Racing stewards are appointed pursuant to M.S.A. Sec. 18.966(35). They are independent contractors according to their affidavits. The stewards' authority is derived from Rule 431.35(e). Pursuant to that rule, the stewards are authorized to seek subpoenas to compel the attendance of witnesses and the production of evidence. They may administer oaths and examine witnesses and they submit a report of their proceedings. They may conduct investigations, and have broad authority to determine penalties. Their decisions are appealable to the Racing Commissioner and subsequently to the state circuit court. M.S.A. Sec. 18.966(41)(5). We conclude that their function in many ways corresponds to that of a prosecutor in his adversarial role and that of a judge in conducting proceedings. They are neutral, appointed officials and they acted on the charge of a horse trainer, in no way related to their positions as stewards. In Freeman v. Blair, 793 F.2d 166 (8th Cir.1986),[3] the court indicated its general inclination to grant absolute immunity for the initiation of administrative proceedings for license suspension, but denied absolute immunity because the events leading to the initiation of suspension proceedings were improper or suspect. Even if absolute immunity were not appropriate[4] as a matter of law, here defendants have established a claim of qualified immunity. Berry, a Michigan case, moreover, sets forth in strong terms the need for police regulation of horse racing, which is inherently fraught with fraud and corruption. The racing stewards are the highest officials at the racetrack charged with protecting that public interest. Friedman has offered no response to the defendants' affidavits which attest to Wright's lack of participation in the ruling against Friedman. Therefore he, too, is entitled to immunity under the circumstances. See Briscoe v. LaHue, supra.
 
 
 20
 In our consideration of the record in this case, we find that Friedman made out no prima facie case. He presented no evidence of religious bias. We consider it irresponsible for a party publicly to charge another of anti-semitism without any evidence to support such a claim. We AFFIRM the decision of the district court and further assess all the costs of this appeal against plaintiff.
 
 
 
 [1]
 Friedman's complaint includes a claim under the Michigan Elliott-Larsen Civil Rights Act, M.S.A. Sec. 3.548. In his response to the defendants' motion for dismissal and/or summary judgment, Friedman conceded that he had failed to state a claim for relief under Michigan law
 
 
 [2]
 The relevance of the Conley deposition is marginal at best if we were to consider it
 
 
 [3]
 Certiorari has been granted in this case. 107 S.Ct. 3254 (1988)
 
 
 [4]
 Although we do not decide in this case whether defendants are entitled to absolute immunity, absolute immunity may be warranted in this case under the teachings of Butz and Cleavinger