Harry MITCHELL, Donna Sprague, and Gloria Stevenson

v.

MAINE HARNESS RACING COMMISSION.

Supreme Judicial Court of Maine.

Argued March 14, 1995.

Decided July 31, 1995.

---

Edward S. MacColl (orally), Marshall J. Tinkle, Thompson, McNaboe, Ashley & Bull, Portland, for plaintiffs.

Jon H. Edwards (orally), Asst. Atty. Gen., Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

Harry Mitchell, Donna Sprague, and Gloria Stevenson (collectively "the trainers") appeal from a judgment entered in the Superior Court (Kennebec County, *Alexander, J.*) affirming the decisions of the Maine Harness Racing Commission finding that each of the trainers had violated the Commission's regulations and imposing a $1,000 fine, one year suspension, and one year ban from licensed race facilities against each trainer. On appeal, the trainers contend, *inter alia,* that (1) the Commission impermissibly failed to comply with the Maine Administrative Procedure Act, (2) the Commission's decisions were not supported by substantial evidence, and (3) the penalties imposed by the Commission were excessive.[1] We affirm the judgment.

The Commission tests horses for the presence of sodium bicarbonate (baking soda or $NaHCO_3$) by measuring the bicarbonate blood-gas levels of horses using a device known as the Nova Stat 5 (a.k.a. the black box). In the summer and fall of 1993, horses under the supervision of each of the trainers were discovered to have what the Commission considered to be high bicarbonate levels. The Commission considers horses with a bicarbonate blood-gas level of 36 mmol/L, or 38 mmol/L for horses receiving Lasix, to have received a banned substance. The Commission held individual disciplinary hearings for

---

1. The trainers also raise other issues in this appeal. We limit our consideration, however, to those issues that were raised before the Commission and pursued before the Superior Court. *See* *New England Whitewater Ctr., Inc. v. Department of Inland Fisheries & Wildlife,* 550 A.2d 56, 58 (Me.1988).

each of the trainers at which the evidence revealed the following:

At Mitchell's hearing, the testimony revealed that he is the trainer of a horse named "To Bad Honey." On July 31, 1993, before the third race at Scarborough Downs, To Bad Honey was discovered to have a bicarbonate blood-gas level of approximately 38.6. The average blood-gas level of the other horses tested on that date was 30.47. Mitchell did not contest the test results, and testified that he approves of horses being tested with the black box. He further testified that he did not administer the drug to his horse and that he should not be punished.

At Sprague's hearing, the testimony revealed that she is the trainer of a horse named "Maxceleration," and on August 1, 1993, before the third race at Scarborough Downs, Maxceleration was discovered to have a bicarbonate blood-gas level of approximately 38.2. The average blood-gas level of the other horses tested on that date was 29.94. At her hearing, Sprague testified that she did not give her horse any sodium bicarbonate and that the high levels must have been caused by a nutritional supplement she had given her horse.

At Stevenson's hearing, the testimony revealed that she is the trainer of a horse named "Oriental Express," and on October 9, 1993, before the fourth race at the Fryeburg Fair, Oriental Express was discovered to have a bicarbonate blood-gas level of approximately 38.8. The average blood-gas level of the other horses tested on that date was 32.72.

The trainers were each found to have violated the Commission's rules. The Commission has rules prohibiting the administration of a "banned substance" to a horse and making a trainer responsible as the absolute insurer for the condition of the horse. The Commission imposed a one year license suspension, one year suspension from any licensed race facility, and $1,000 fine on each.

Pursuant to 5 M.R.S.A. § 11001–11008 (1989) and M.R.Civ.P. 80C, the trainers filed complaints seeking review of the Commission's decisions in Superior Court. Pursuant to M.R.Civ.P. 42(a), their cases were consoli-

dated with other trainers before the Superior Court. Following a hearing, the Superior Court affirmed the decisions of the Commission, and this appeal followed.

■ When, as here, there is an appeal from an intermediate appellate review of an administrative decision, we review the agency decision directly for an abuse of discretion, error of law, or finding not supported by the evidence. *International Paper Co. v. Board of Envtl. Protection,* 629 A.2d 597, 599 (Me.1993); *see* 5 M.R.S.A. § 11007.

## I.

■ The trainers contend the Commission failed to comply with the requirements of the Maine Administrative Procedure Act, 5 M.R.S.A. §§ 8001–11008 (1989 & Supp.1994), by adopting a "rule" that sodium bicarbonate is a banned substance. We are unpersuaded by that contention.

■ Before an agency adopts a rule, it must comply with the rule making requirements of the APA. 5 M.R.S.A. §§ 8052–8054. If it fails to do so, then the rule will have no legal effect. *Id.* § 8057(1). A "rule" is defined as follows:

"Rule" means the whole or any part of every regulation, standard, code, statement of policy, or other agency statement of general applicability, including the amendment, suspension or repeal of any prior rule, that is or is intended to be judicially enforceable and implements, interprets or makes specific the law administered by the agency, or describes the procedures or practices of the agency.

5 M.R.S.A. § 8002(9)(A) (Supp.1994). Although the Commission refers to its standard that sodium bicarbonate is a banned substance as a "rule," that label is not dispositive of whether it is a rule for which it must engage in rule making.

The Commission promulgated a regulation that defines a "banned substance" as follows:

1. any foreign substance, including a narcotic, stimulant, depressant, tranquilizer, local anesthetic, analgesic, drug or drug metabolite, or biological substance, other than equine feeds or nutritional supple-

ments as defined by the Federal Drug Administration [sic], at a level greater than the level found in the normal, untreated horse that might effect [sic] the performance of a horse; or

2. any foreign substance, regardless of how harmless or innocuous it might be that might interfere with the detection or quantitation of a narcotic, stimulant, depressant, tranquilizer, local anesthetic, analgesic, drug or drug metabolite, or biological substance, other than equine feeds or nutritional supplements as defined by the Federal Drug Administration [sic], at a level greater than the level found in the normal untreated horse that might effect [sic] the performance of a horse.

Me. State Harness Racing Comm'n Reg. 1.1(H). The trainers concede that this regulation is a rule, and they do not contend that the Commission failed to comply with the rule making provisions of the APA in its promulgation.

After promulgating this rule, the Commission did not have to enumerate every substance that comes within its definition of a "banned substance." Instead, during the hearings the Commission may determine that sodium bicarbonate is a "banned substance," pursuant to its definition to establish that the trainers have committed a violation. *See, e.g., DeGroot v. Arizona Racing Comm'n,* 141 Ariz. 331, 341, 686 P.2d 1301, 1311 (App.1984) (drug determined to be a prohibited substance from the evidence presented at hearing); *Berry v. Michigan Racing Comm'r,* 116 Mich.App. 164, 321 N.W.2d 880, 884–85 (1982) (relying on testimony of two doctors, hearing officer determined apomorphine was a stimulant).

The Commission's standard concerning sodium bicarbonate is not a "rule" for which the Commission must engage in rule making. Contrary to the contention of the trainers, the Commission is not obligated to enumerate each and every example of a "banned substance" through the formal rule making procedures. The Commission did not impermissibly fail to follow the rule making provisions of the APA.

## II.

The trainers contend that there was insufficient evidence to support the Commission's finding that they administered a banned substance to their horses. We disagree.

Evidence was presented before the Commission that each trainer's horse had bicarbonate blood-gas levels in excess of the average blood-gas level of the other horses tested on that night and above the Commission's cut-off standard. Stevenson was the only trainer who contested whether, and at what level, sodium bicarbonate should be considered a banned substance. In response, a veterinarian testified that Stevenson's horse tested above the normal range of bicarbonate levels. Furthermore, there was evidence before the Commission, contained in a magazine article presented by Stevenson herself, that sodium bicarbonate both enhances the performance of a horse and masks the presence of other drugs. *See* Me. State Harness Racing Comm'n Reg. 1.1(H) (defining banned substance as a substance found at an elevated level that either might affect the performance of a horse or interferes with the detection of a substance that might affect the performance of a horse). There was sufficient evidence before the Commission to sustain its decisions.

## III.

The trainers also contend that the Commission abused its discretion by imposing excessive penalties. 8 M.R.S.A. § 279–B (Supp.1994) authorizes the Commission to levy fines not to exceed $1,000 and to impose license suspensions. *See also* Me. State Harness Racing Comm'n Reg. 11.12. The fines and suspensions imposed by the Commission were authorized by the statute and within the discretion of the Commission.

The entry is:

Judgment affirmed.

All concurring.