PEOPLE v. WARD.

AUTOMOBILES—OVERLOADED EQUIPMENT—EQUALLY DIVIDED COURT.
  Order quashing complaint against lessee of overloaded truck that
    was operated upon the public highway in violation of statute
    is affirmed by an equally divided court (CLS 1956, § 257.724).

Appeal from Wayne; Gilmore (Horace W.), J.
Submitted April 13, 1961. (Docket No. 69, Calendar
No. 48,809.) Decided November 30, 1961.

Carl E. Ward, doing business as Carl E. Ward
Trucking Company, lessee of truck, on motion for
directed verdict was acquitted on charge of violating
statute relative to vehicle axle load limits. The
people appeal. Affirmed by an equally divided court.

*Paul L. Adams*, Attorney General, *Samuel J.
Torina*, Solicitor General, *Samuel H. Olsen*, Prose-
cuting Attorney, *Hobart Taylor Jr.*, and *F. Clifton
Lind*, Assistant Prosecuting Attorneys, for the
people.

*Samuel Reiss* (*David Gooze*, of counsel), for de-
fendant.

SOURIS, J. (*for reversal*). Upon complaint of a
deputized weighmaster employed by the Wayne
county road commission, a warrant was issued by a
justice of the peace accusing defendant—as lessee
of the truck found overloaded—of guilt under pres-

---

REFERENCES FOR POINTS IN HEADNOTES
  3 Am Jur, Appeal and Error § 1160.

ently considered section 724* of the Michigan vehicle code. Conviction and appeal to the circuit court followed. Trial to the court resulted in grant of defendant's motion to quash and discharge on ground that the people had failed to prove that he, distinguished from his employee-driver, was guilty as charged.

It was not shown that defendant counseled or otherwise participated in the employee's violation of the Michigan vehicle code. It was shown that the employee, while engaged in the course of his employment, drove the grossly overloaded truck on a public highway in violation of said code. A verdict of guilt on defendant's part would be legally justified only if the legislature has, by the phrasing of subsection 724(c), dispensed with the requirement of *mens rea* in prosecutions as at bar.

The people, appealing by granted leave, rely for reversal upon the rule Mr. Justice COOLEY expounded in *People* v. *Roby,* 52 Mich 577 (50 Am Rep 270). It is that a legislature may, by police regulations, impose criminal penalties "irrespective of any intent to violate them; the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible."† The people say that the legislature has exercised such power by ordaining criminal responsibility of owners and lessees

---

* CLS 1956, § 257.724 (Stat Ann 1960 Rev § 9.2424).

† "Criminal intent is, ordinarily, an element of crime, and this is true although the offense is purely statutory. It is competent, however, for the legislature to make certain acts, coupled with certain facts, offenses, punishable by fine and imprisonment, without regard to the actor's actual knowledge of the existence of the facts. *People* v. *Worden Grocer Co.,* 118 Mich 604; *People* v. *Snowberger,* 113 Mich 86 (67 Am St Rep 449); *People* v. *Roby,* 52 Mich 577 (50 Am Rep 270); *People* v. *Curtis,* 129 Mich 1 (95 Am St Rep 404). Such legislation is enacted and is sustained, for the most part, on grounds of necessity. Courts are, however, slow to find a legislative intention to condemn a man for not knowing that which he cannot know." *People* v. *Rice,* 161 Mich 657, 664. See, also, *Halsted* v. *State,* 41 NJL 552, 592 (32 Am Rep 247); annotation, 11 ALR 1434; *People* v. *Ruthenberg,* 229 Mich 315, 324, 325; *People* v. *Coleman,* 337 Mich 247.

of trucking equipment for violation of vehicle load limits whether they participate or do not participate in such violation. The contention turns upon absence, from subsection (c) of said section 724, of the word "knowingly"; whereas the word (or others of like import) appears in other corresponding sections of the vehicle code including subsections (d) and (f) of said section 724.

Now, to consider said section 724, subd (c). It reads (CLS 1956, § 257.724 [Stat Ann 1960 Rev § 9.2424]):

"(c) Any owner of any vehicle as defined in this act, or any lessee, who violates the provisions of section 722* of this act [limiting axle loads of equipment driven on public highways] shall be deemed guilty of a misdemeanor and upon conviction thereof shall be assessed a fine."

The most superficial examination of the language of this subsection suggests that the legislature doubtless intended to make owners and lessees of overloaded trucks violators thereof upon mere showing of the fact of ownership or lease, plus, of course, the fact that the owned or leased truck has been apprehended on a public highway with a load in excess of statutory limits. The offense charged is a misdemeanor. It is punishable only by a fine, calculated by multiplying the weighed overload by so many cents per pound graduated upward to the extent of such weighed overload. Proof of scienter is not made a requirement for proof of violation of this subsection. Our conclusion is substantiated by comparison of the language of subsection (c) with the language of subsections (d) and (f) of section 724.

In those instances in which the legislature desired to require proof of scienter, it said so. Subsection 724(d) provides:

---

\* CLS 1956, § 257.722 (Stat Ann 1960 Rev § 9.2422).—REPORTER.

"Any driver or owner of any vehicle as defined in this act who shall knowingly fail to stop at or who shall knowingly by-pass any scales or weighing station shall be deemed guilty of a misdemeanor and upon conviction thereof shall be assessed a fine not to exceed $100, or shall be imprisoned in the county jail not to exceed 90 days, or both."

Subsection 724(f) provides:

"Any driver or owner of any vehicle, as defined in this act, who shall knowingly fail to stop when requested or ordered to do so by any police officer, or any duly authorized agent of the Michigan highway department, or a representative or agent of a county road commission, authorized to require the driver to stop and submit to a weighing of his vehicle and load by means of a portable scale, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be assessed a fine not to exceed $100, or shall be imprisoned in the county jail not to exceed 90 days, or both."

There is nothing to suggest that the distinction between subsection (c) and subsections (d) and (f) is the result of legislative carelessness. On the contrary, legislative history supports the conclusion that the legislature intended the distinction it so clearly expressed. Until 1952 the substance of all 3 subsections was contained in one. Subsection 724(c) *then* read:

"Any driver and/or owner of any vehicle as defined in this act who violates the provisions of section 722 of this act or who shall knowingly fail to stop at or who shall knowingly by-pass any scales or weighing station with an overload, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be assessed a fine of not to exceed $100 and shall be assessed damages in an amount equal to 2 cents per pound," et cetera.*

* See PA 1951, No 233.—REPORTER.

Even then knowledge was not an element of the crime now proscribed by amended subsection (c). In separating the 3 distinct criminal acts by PA 1952, No 13, and PA 1955, No 209, the legislature carefully preserved the distinction between the first and the remaining two.

The order should be reversed and the cause remanded.

BLACK and EDWARDS, JJ., concurred with SOURIS, J.

BLACK, J. (*for reversal*). The question in this apparently simple case is close and difficult. The pertinent intent is so obscure as to suggest that members of the legislature did not reach or consider the possibility or merit of today's question. In any event I am persuaded, despite having written—originally— to the contrary as assignee of the case, that Mr. Justice SOURIS is right and that his opinion for reversal has the better of our groping argument for the right decision.

With these possibly qualifying thoughts in mind I have signed the mentioned opinion for reversal and have withdrawn my originally submitted opinion. When a man is persuaded he is wrong, he should say so, on the record for all to see.

DETHMERS, C. J. (*for affirmance*). The facts are stated in Mr. Justice SOURIS' opinion. The question is what the legislature meant in enacting CLS 1956, § 257.724, subd (c) (Stat Ann 1960 Rev § 9.2424, subd [c]), and causing it to read:

"Any owner of any vehicle as defined in this act, or any lessee, who violates the provisions of section 722* of this act shall be deemed guilty of a misde-

---

* CLS 1956, § 257.722 (Stat Ann 1960 Rev § 9.2422).—REPORTER.

meanor and upon conviction thereof shall be assessed a fine in an amount   *   *   *."

I do not agree with my Brother's view that that language, in and of itself, discloses a legislative intent to make an owner or lessee of an overloaded. truck on a public highway guilty of a misdemeanor, even though he was not the driver, was not present, and did not counsel, participate in, authorize, or even know of the overloaded condition. The language of that subsection certainly does not say so. It does not say that the owner or lessee of the vehicle "shall be deemed guilty of a misdemeanor" if it is overloaded, and much less does it say that he shall be so deemed if it is overloaded either with or without his knowledge, consent, direction, or participation. It says only that he "shall be deemed guilty of a misdemeanor" if he "violates the provisions of section 722", the latter containing the maximum axle load provisions. Did defendant violate the provisions of section 722? Aside from accepting a lease of the truck, what did he do or fail to do to constitute such violation? There are no proofs providing an answer.

If the truck were stolen and overloaded by the thief without the lessee's knowledge, would the latter, nonetheless, be violating section 722? Was that the legislative intent? An affirmative answer must follow Justice Souris' reasoning and decision based solely on ownership of the lessee's interest in the truck. Or suppose the driver were warned by his employer, the lessee, not to overload, as the proofs here show he was, but the driver disobeyed his employer in that regard, would the lessee, despite his contrary instructions, be violating section 722? Did the legislature intend that? No language in section 724, subd (c), says so nor indicates such intent.

It is reasoned that absence of the word "knowingly" before the word "violates" in section 724, subd

(c), is expressive of a legislative intent to make proof of scienter unnecessary, because, in contrast, the word "knowingly" is used in 724, subds (d) and (f), which relate to knowingly failing to stop at or by-passing a weighing station or knowingly failing to stop when ordered by certain officers. Those subsections make it a misdemeanor to knowingly do or fail to do some physical act. It is understandable that the legislature would not desire to declare one guilty of a misdemeanor for an act or failure to act of which the accused was unaware, and, hence, employed the word "knowingly" with respect thereto in those 2 subsections. But 724, subd (c), makes it a misdemeanor to "violate". In that connection one might be aware of the act of overloading but claim not to know that it was a violation of law. Hence, a plausible legislative reason for avoiding the use of the word "knowingly" before the word "violates" in section 724, subd (c). In other words, ignorance of the law may not have been intended to be a defense. Does it follow that ignorance of the occurrence of the acts which constitute the violation was intended to be no defense? The statute does not say so. If presence of a word, such as "knowingly", in 2 other places in the statute but its absence from 724, subd (c), thereof is to be accorded the significance suggested, what shall we conclude from the fact that in section 720* of the act which requires certain protective devices on vehicles carrying logs and tubular products and in section 721† which requires other safety devices in connection with attaching a tractor or vehicle to another, the act prohibited is that the vehicle "be driven upon any highway" without compliance with those requirements, but that section 722, in prohibiting overloading, makes no reference

---

* CLS 1956, § 257.720, as amended by PA 1959, No 215 (Stat Ann 1960 Rev § 9.2420).—REPORTER.

† CLS 1956, § 257.721 (Stat Ann 1960 Rev § 9.2421).—REPORTER.

to driving or placing the overloaded vehicle upon a highway? Does it follow that the legislature expressed an intent, by omission from section 722 of such language about driving upon a highway, to make it unlawful to have an overloaded truck anywhere, even if only standing in the owner's backyard? We do not think so, as the statute, obviously, was enacted not for the protection of trucks but of highways against excessive weights. And yet the logic for so holding would parallel that urged by my Brother with respect to the significance of the presence elsewhere in the act but absence of the word "knowingly" from section 724, subd (c). This demonstrates the danger inherent in this type of reasoning. In view of the judicial reluctance to find that the legislature intended a man to be held guilty of a criminal violation about which he knows nothing, as set forth in the footnote to Mr. Justice SOURIS' opinion and the authorities therein cited, it seems to me that, before doing so, some more certain foundation should be found for a holding that this was the legislative intent.

Affirmed.

CARR and KAVANAGH, JJ., concurred with DETHMERS, C. J.

KELLY, J., did not sit.

OTIS M. SMITH, J., took no part in the decision of this case.