PEOPLE v QUINN

Docket No. 91667. Argued March 4, 1992 (Calendar No. 6). Decided
    July 14, 1992.

Kevin Quinn was convicted by a jury in the Oakland Circuit
    Court, Alice L. Gilbert, J., of transporting or possessing a
    loaded firearm, other than a pistol, in a vehicle. The Court of
    Appeals, SULLIVAN, P.J., and MAHER and GRIFFIN, JJ., reversed
    in an opinion per curiam, holding that knowledge that the
    firearm was loaded is a necessary element of the offense, MCL
    750.227c; MSA 28.424(3), and that because the state failed to
    prove that the defendant knew the firearm was loaded, the
    evidence was insufficient to support the conviction (Docket No.
    120672). The people appeal.

    In an opinion by Justice BOYLE, joined by Chief Justice
CAVANAGH, and Justices BRICKLEY, RILEY, GRIFFIN, and MALLETT,
the Supreme Court *held*:

    Knowledge that a firearm is loaded is not an element of the
offense of transporting or possessing a loaded firearm, other
than a pistol, in a vehicle.

    1. Where a criminal statute does not codify a common-law
offense, and omits the element of knowledge or intent, it is the
intent of the Legislature that determines whether knowledge
must be proven as an element of the offense or whether the
offender will be held liable regardless of what was known. A
state may decide, under its police power, that public policy
requires certain acts or omissions to be punished regardless of
the actor's intent. While statutes creating strict liability re-
garding all their elements are not favored, where a statute
requires a criminal mind for some but not all of its elements, it
is not one of strict liability. True strict liability crimes are
proper under certain circumstances, however. Thus, the Legis-
lature may define an act to make it criminal without defining
the actor's knowledge as an element of the offense.

    2. MCL 750.227c; MSA 28.424(3) prohibits the transportation

REFERENCES

Am Jur 2d, Weapons and Firearms § 15.

See the Index to Annotations under Intent or Motive; Weapons and
    Firearms.

or possession of a loaded firearm other than a pistol in a motor
vehicle. The legislative history of the statute evidences an
intent to protect the public by regulatory sanction and to hold
violators liable for knowing transportation of a firearm that in
fact is loaded, irrespective of whether a violator actually knew
that the firearm was loaded, because it is the violator's duty to
ascertain this fact. The duty imposed by the statute is the duty
to protect the public safety by guarding against the fortuity of
accidental or intentional discharge.

3. Knowledge that a firearm is loaded is not an element of
§ 227c. Under the statute, those who transport firearms in
vehicles have a duty to inspect them before transporting and, if
loaded, to unload them. In this case, no evidence was presented
that the defendant actually placed the loaded firearm into the
vehicle. However, as the driver of the car transporting the
firearm, he had the opportunity to ascertain whether it was
loaded, and was in the best position to protect against the
dangers recognized in § 227c.

Justice LEVIN, concurring in the reversal of the decision of
the Court of Appeals, stated that before transporting or possess-
ing a firearm other than a pistol in a motor vehicle a citizen
must see to it that the firearm is taken down, enclosed in a
case, or placed in the trunk of the vehicle or in a place
inaccessible from the interior of the vehicle, and also must
assure that it is unloaded. Consistent with the statutory pur-
pose to impose such obligations, a prima facie case of violation
of the statutory proscriptions is made on evidence tending to
show that the accused transported or possessed a loaded fire-
arm in a vehicle.

Knowledge that the firearm is loaded is an element of the
offense, and the prosecution has the burden of establishing and
persuading the trier of fact beyond a reasonable doubt that the
accused not only knowingly transported or possessed a firearm,
but also that it was done with the knowledge that the firearm
was loaded. It would be reasonable to conclude that the pros-
ecutor establishes a prima facie case of knowledge upon adduc-
ing evidentiary facts tending to show that the accused trans-
ported or possessed a loaded firearm other than a pistol in a
motor vehicle, without proffering additional evidence respecting
knowledge that the firearm was loaded. There is no need to
eliminate knowledge as an element of the offense in order to
effectively enforce this legislation, which was not aimed at any
problem confronting prosecutors in establishing knowledge, but
rather at the absence of any legislation proscribing the carry-

ing of loaded firearms other than pistols in motor vehicles in
urban areas.

Reversed.

189 Mich App 225; 471 NW2d 654 (1991) reversed.

WEAPONS — POSSESSION OF A LOADED FIREARM IN A VEHICLE —
SCIENTER.

Knowledge that a firearm is loaded is not an element of the
offense of transporting or possessing a loaded firearm, other
than a pistol, in a vehicle (MCL 750.227c; MSA 28.424[3]).

*Frank J. Kelley,* Attorney General, *Gay Secor
Hardy,* Solicitor General, *Richard Thompson,* Pros-
ecuting Attorney, and *Michael J. Modelski,* Chief,
Appellate Division, for the people.

*Arthur James Rubiner* for the defendant.

BOYLE, J. We granted leave in this case to decide
whether under MCL 750.227c; MSA 28.424(3),
knowledge that a firearm is loaded[1] is an element
of the offense of transporting or possessing a
loaded firearm other than a pistol in or upon a
vehicle.[2] The Court of Appeals set aside the defen-
dant's conviction and, because jeopardy precludes
retrial following reversal for insufficiency of the

[1] The prosecutor does not contest that the statute requires proof of
knowledge of the presence of the firearm in the vehicle. We assume
arguendo that proof of knowledge of the presence of the firearm is an
element of the offense in question, recognizing that the question has
not been decided by this Court or the Court of Appeals.

[2] MCL 750.227c; MSA 28.424(3) provides:

(1) Except as otherwise permitted by law, a person shall not
transport or possess in or upon a sailboat or a motor vehicle,
aircraft, motorboat, or any other vehicle propelled by mechani-
cal means, a firearm, other than a pistol, which is loaded.

(2) A person who violates this section is guilty of a mis-
demeanor, punishable by imprisonment for not more than 2
years, or a fine of not more than $2,500.00, or both.

(3) This section does not apply to a person who violates
section 10(1)(g) of chapter II of Act No. 286 of the Public Acts of
1929, as amended, being section 312.10 of the Michigan Com-
piled Laws.

evidence,[3] dismissed the charge. The Court held that knowledge that the firearm was loaded is a necessary element of the offense and that the state had failed to prove that the defendant knew that the firearm was loaded.

We hold that the Legislature did not intend that knowledge that a firearm is loaded is an element of the offense. We reverse the decision of the Court of Appeals and reinstate the defendant's conviction.

I

On March 3, 1987, the defendant and several other persons were firing a variety of firearms on state game land in rural Oakland County approximately twenty-five to thirty miles from the defendant's home. A neighbor, an off-duty police detective, heard the shooting and became concerned that, because there were so many shots, automatic weapons possibly were being fired. The off-duty officer drove to an area on the state-owned property where he saw several males shooting what appeared to him to be shotguns and automatic assault-type rifles. He also observed three four-wheel-drive vehicles that contained several rifles and shotguns laid out on the open tailgates. He asked one of the persons present to stop firing because the noise was scaring the livestock.

The detective returned to his home and telephoned the Michigan State Police. Before a trooper's arrival, the detective observed the vehicles leaving the area and was able to jot down the license tag numbers of two of the vehicles.

These vehicles, a Chevrolet Blazer and a four-wheel-drive Toyota, were eventually stopped by an

---

[3] *Burks v United States,* 437 US 1; 98 S Ct 2141; 57 L Ed 2d 1 (1978).

Oakland County Sheriff's deputy at Dixie High-
way and Levon, one street north of Interstate 75,
approximately six to seven miles from the land
where the occupants had been firing the firearms.
The defendant, Kevin Quinn, was the driver of the
Toyota; two other persons rode with him, one in
the front passenger seat, and one in the rear. The
deputy contacted the troopers assigned to the com-
plaint.

Shortly after their arrival, the troopers looked
into the rear windows of both vehicles and saw
many firearms[4] in the back and on both back seats
of each vehicle. Closer inspection disclosed that
one of the firearms found in the Toyota, a Calico
M-100 carbine .22 calibre assault rifle, was loaded.
It contained one round of ammunition in its cham-
ber. In addition to the firearms found, the officers
located seventeen ammunition clips in the Chevro-
let Blazer and a total of 883 live rounds of ammu-
nition in both vehicles.

After being apprised of his *Miranda*[5] rights,
Quinn initially admitted owning only seven of the
firearms found in the vehicles. However, he later
told the officers that they "should just charge him
with all the weapons because in fact they were all
his. They did not belong to anyone else."

Mr. Quinn was convicted by a jury of transport-
ing or possessing a loaded firearm other than a

─────

[4] In the Toyota, the officers found four firearms and a bayonet. The
firearms found were: (1) a loaded Calico M-100 carbine .22 calibre
assault rifle, (2) an unloaded Armalite AR-180 5.56 calibre assault
rifle, (3) an unloaded FEG 7.62 calibre assault rifle, and (4) an
unloaded Valmet M-76 5.56 calibre assault rifle. Six firearms were
found in the Chevrolet Blazer: (1) a loaded Winchester Defender 12-
gauge shotgun, (2) an unloaded Ithaca 12-gauge shotgun, (3) an
unloaded H & K Model 94 9 mm assault rifle, (4) an unloaded Colt
Model AR-15 .223 calibre assault rifle, (5) an unloaded Colt Model AR-
15 9 mm assault rifle, and (6) an unloaded Winchester Defender 12-
gauge shotgun.

[5] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694
(1966).

pistol in or upon a vehicle, pursuant to MCL
750.227c; MSA 28.424(3), and was sentenced to a
term of imprisonment of forty-five days. He ap-
pealed, and the Court of Appeals, in a per curiam
decision, vacated the conviction and dismissed the
charge. 189 Mich App 225, 227; 471 NW2d 654
(1991).

The premise of the Court of Appeals opinion was
that MCL 750.227c; MSA 28.424(3), "is· the coun-
terpart" of Michigan's statutory prohibition
against carrying a concealed weapon, MCL
750.227; MSA 28.424,[6] being "similar in both word-
ing and purpose." 189 Mich App 227. Because a
knowledge element had been read into the latter
statute, *People v Lane,* 102 Mich App 11; 300
NW2d 717 (1980),[7] the Court concluded that it was
necessary to engraft a knowledge requirement as
an element of a violation of MCL 750.227c; MSA
28.424(3). Because the state had not proved that
the defendant knew the gun was loaded, the panel
held that the evidence was insufficient to support
the conviction.

[6] MCL 750.227; MSA 28.424 provides:

   (1) A person shall not carry a dagger, dirk, stiletto, a double-
edged nonfolding stabbing instrument of any length, or any
other dangerous weapon, except a hunting knife adapted and
carried as such, concealed on or about his or her person, or
whether concealed or otherwise in any vehicle operated or
occupied by the person, except in his or her dwelling house,
place of business or on other land possessed by the person.

   (2) A person shall not carry a pistol concealed on or about
his or her person, or, whether concealed or otherwise, in a
vehicle operated or occupied by the person, except in his or her
dwelling house, place of business, or on other land possessed by
the person, without a license to carry the pistol as provided by
law and if licensed, shall not carry the pistol in a place or
manner inconsistent with any restrictions upon such license.

   (3) A person who violates this section is guilty of a felony,
punishable by imprisonment for not more than 5 years, or by a
fine of not more than $2,500.00.

[7] We do not here express any opinion regarding the court's state-
ment in *Lane* that scienter is necessary to prevent overbreadth.

We granted the prosecution's application for leave to appeal. 439 Mich 868 (1991).

A

While the defendant offers a passing reference to "due process" requirements, the respective parties' analyses, like that of the Court of Appeals, actually focus on whether the Legislature intended to incorporate an element of knowledge into the statute. Thus, the defendant contends that, although scienter is not expressly mentioned in the statute, knowledge that the firearm is loaded should nonetheless be required "to limit the statute's application to knowing, rather than innocent, violations of the statute's provisions." *Lane,* 102 Mich App 15.

Stressing that the people agree that knowledge that a firearm is present in the vehicle is an element of the offense,[8] the people respond that there is nothing in the language or legislative history of the statute evidencing the Legislature's intent to create a "double knowledge" requirement that would require proof not only of knowledge of the presence of the firearm, but also proof that defendant knew that the firearm transported was loaded. In sum, the people contend that the interpretation of the statute advanced comports with the legislative intent to create an affirmative duty for those who knowingly possess or transport firearms in their vehicles to ensure that the firearms are unloaded.

We agree. The construction adopted today makes those who transport firearms responsible for their safe transportation, protecting those in-

[8] In light of the prosecutor's concession, we do not deal with the more controversial issues involved in true strict liability crimes, i.e., statutes requiring no mens rea at all.

side and outside the vehicle against the dangers of discharge, without posing the danger of conviction for those who "transport" firearms without knowledge of their presence.

## II

We deal with this issue as a matter of statutory construction. We observe at the outset, however, that while the wisdom and efficiency of excluding elements of knowledge from the definition of a crime has been questioned,[9] the United States Supreme Court has recognized as a general matter that the constitution does not preclude the enactment of even strict liability criminal statutes. *Lambert v California*, 355 US 225; 78 S Ct 240; 2 L Ed 2d 228 (1957). Thus, where the Legislature in enacting a statute has omitted language indicating that fault is a necessary ingredient, the challenge typically focuses, as here, not on the constitutionality of the enactment, but rather on whether the intent of the Legislature was actually to require some fault as a predicate to finding guilt, irrespective of the failure to expressly so state. See LaFave & Scott, Criminal Law (2d ed), § 3.8, p 243.

In the seminal case of *Morissette v United States*, 342 US 246; 72 S Ct 240; 96 L Ed 288 (1952), the United States Supreme Court concluded that where the criminal statute is a codification of

---

[9] The Model Penal Code "is vigorously anti-strict liability, providing that there are no strict liability 'crimes' within the Code, only strict liability 'violations' . . . ." Singer, *The resurgence of* mens rea: *III— The rise and fall of strict criminal liability,* 30 B C L R 337, 381 (1989). Singer points out that, under the Model Penal Code, a violation is an act for which imprisonment is not a penalty. Crimes, however, do involve imprisonment as a penalty.

According to LaFave and Scott, " 'The consensus can be summarily stated: to punish conduct without reference to the actor's state of mind is both inefficacious and unjust.' " LaFave & Scott, Criminal Law (2d ed), § 3.8, p 248, quoting Packer, *Mens rea and the Supreme Court,* 1962 Sup Ct R 107, 109.

the common law, and where mens rea was a necessary element of the crime at common law, the Court will not interpret the statute as dispensing with knowledge as a necessary element. The Court. stated, "The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion." *Id.* at 250. Distinguishing and approving *United States v Balint,* 258 US 250; 42 S Ct 301; 66 L Ed 604 (1922), and *United States v Behrman,* 258 US 280; 42 S Ct 303; 66 L Ed 619 (1922), which declined to import a knowledge requirement into statutes creating public welfare offenses, and citing Justice COOLEY's statement that the purpose of imposing criminal penalties in this class of regulation is " 'to require a degree of diligence for the protection of the public which shall render violation impossible,' " 342 US 257, the Court refused to extend the doctrine to crimes codifying common-law offenses.

Thus, where the offense in question does not codify a common-law offense and the statute omits the element of knowledge or intent, the United States Supreme Court examines the intent of the Legislature to determine whether it intended that knowledge be proven as an element of the offense, or whether it intended to hold the offender liable regardless of what he knew or did not know.[10]

We are persuaded that our interpretation of the Legislature's intent in enacting this statute falls comfortably within the parameters of federal authority holding that a state may decide under the police power that public policy requires that cer-

---

[10] See *Liparota v United States,* 471 US 419; 105 S Ct 2084; 85 L Ed 2d 434 (1985); *United States v Bailey,* 444 US 394; 100 S Ct 624; 62 L Ed 2d 575 (1980); *United States v United States Gypsum Co,* 438 US 422; 98 S Ct 2864; 57 L Ed 2d 854 (1978); *United States v Freed,* 401 US 601; 91 S Ct 1112; 28 L Ed 2d 356 (1971), reh den 403 US 912 (1971); *Morissette v United States, supra; United States v Dotterweich,* 320 US 277; 64 S Ct 134; 88 L Ed 48 (1943), reh den 320 US 815 (1943); *Behrman, supra; Balint, supra.*

tain acts or omissions to act be punished regardless of the actor's intent. *Shevlin-Carpenter Co v Minnesota,* 218 US 57; 30 S Ct 663; 54 L Ed 930 (1910). In these instances, the actor "shall do them at his peril and will not be heard to plead in defense good faith or ignorance." *Id.* at 70. The statute does not punish crimes *mala in se* but, rather, regulates conduct under the state's police power to promote the social good, a course the Legislature may elect without requiring mens rea. This construction also comports with the purpose of public welfare regulation to protect those who are otherwise unable to protect themselves by placing "the burden of acting at hazard upon a person otherwise innocent but standing in responsible relation to a public danger." *United States v Dotterweich,* 320 US 277, 281; 64 S Ct 134; 88 L Ed 48 (1943), citing *Balint.*

In summary, the United States Supreme Court, in interpreting legislative intent regarding the element of fault, has applied an analytical framework that considers each separate element of the statute. Statutes creating strict liability regarding all their elements are not favored. However, where a statute requires a criminal mind for some but not all of its elements, it is not one of strict liability, *United States v Freed,* 401 US 601, 612; 91 S Ct 1112; 28 L Ed 2d 356 (1971).[11] In such a case, the Legislature is not imposing liability without any fault at all; instead, it has determined that regarding that element, responsibility for the protection of the public should be placed on the

---

[11] Brennan, J., concurring. Thus, in *Bailey, supra,* the Court concluded that a federal statute punishing escape from custody required proof that defendants knew that they were leaving the jail without authorization, but not proof of intent to avoid confinement. And in *Freed, supra,* construing a statute punishing possession of unregistered firearms, the Court observed that lower court decisions held that the only knowledge to be proved was knowledge that the instrument was a firearm, not knowledge of the registration requirement.

person who can best avoid the harm sought to be prevented—the actor himself.

### III

That true strict liability crimes are proper under some circumstances is also well settled in Michigan. The Legislature may impose certain penalties regardless of the actor's criminal intent and regardless of what the actor actually knew or did not know.[12] The initial development of this method of interpretation of statutes in the nature of police regulation began with laws concerning adulterated food, commerce, and liquor. Familiar contemporary examples include the fact that a reasonable or good-faith mistake regarding a victim's age is not a defense to third-degree criminal sexual conduct under MCL 750.520d(1)(a); MSA 28.788(4)(1)(a),

[12] See, e.g., *People v Ward*, 364 Mich 671; 112 NW2d 60 (1961) (an equally divided Court affirmed a truck owner's conviction for operating an overloaded truck on the highway even without the owner's knowledge of weight violation); *People v Avery*, 236 Mich 549; 211 NW 349 (1926) (an equally divided Court affirmed a conviction for violation of liquor laws absent a showing of intent); *People v Hatinger*, 174 Mich 333; 140 NW 648 (1913) (it would defeat the purpose of the statute to require the state to prove knowledge); *People v Snowberger*, 113 Mich 86; 71 NW 497 (1897) (the Legislature, under its police power, may declare an act criminal without making intent an element of the offense); *People v Welch*, 71 Mich 548; 39 NW 747 (1888) (ignorance of the facts that violate a statute is no excuse where intent is not an element of the offense); *People v Roby*, 52 Mich 577, 579; 18 NW 365 (1884) (the "purpose [is] to require a degree of diligence for the protection of the public which shall render violation impossible"); *People v Waldvogel*, 49 Mich 337; 13 NW 620 (1882) (no intent is necessary under the statute requiring bars to be kept closed on Sundays); *People v Olson*, 181 Mich App 348, 352; 448 NW2d 845 (1989) (where the penalty is relatively small and where conviction does not "gravely besmirch" a defendant's reputation, dispensing with the element of criminal intent does not violate due process); *People v Abramczyk*, 163 Mich App 473; 415 NW2d 249 (1987) (the Legislature can define a crime without regard to criminal intent); *Berry v Michigan Racing Comm'r*, 116 Mich App 164, 170; 321 NW2d 880 (1982), app dis 469 US 806 (1984) (the statute imposed a " 'duty to implement measures that will insure that violations will not occur,' " quoting *United States v Park*, 421 US 658, 672; 95 S Ct 1903; 44 L Ed 2d 489 [1975]).

*People v Cash,* 419 Mich 230; 351 NW2d 822
(1984), that the prosecution need not prove as an
element of the offense of carrying a concealed
weapon, MCL 750.227; MSA 28.424, that the defen-
dant knew his permit was expired, *People v
Combs,* 160 Mich App 666, 673; 408 NW2d 420
(1987), and that a defendant need not know the
quantity of narcotics possessed to be found guilty
of possession of a controlled substance under MCL
333.7401; MSA 14.15(7401), *People v Hamp,* 170
Mich App 24; 428 NW2d 16 (1988), vacated in part
437 Mich 865 (1990); *People v Cortez,* 131 Mich
App 316; 346 NW2d 540 (1984), remanded on other
grounds 423 Mich 855 (1985).

We have specifically acknowledged that, in some
instances, requiring the prosecutor to prove knowl-
edge would frustrate the regulatory purposes of
the statute. Thus, in *People v Hatinger,* 174 Mich
333, 335; 140 NW 648 (1913), under a statute
forbidding the sale of intoxicating liquor, this
Court stated that "[l]aws forbidding the sale of
intoxicating liquor and impure foods would be of
little use, if convictions for their violations were to
depend on showing guilty knowledge." Thus, stat-
utes making acts criminal regardless of intent are
" 'enacted and . . . sustained, for the most part,
on grounds of necessity.' " *People v Avery,* 236
Mich 549, 552; 211 NW 349 (1926), accord *People v
Snowberger,* 113 Mich 86; 71 NW 497 (1897).[13]

Contrary to the defendant's assertion, it is clear
under both federal and state authority that the
Legislature, as part of its police powers, may de-

_____

[13] The Court of Appeals has also noted that it is the police powers of
the Legislature that allow it to define a crime without regard to
criminal intent. "In areas subject to strong police regulation, the state
may impose the burden of acting at hazard upon a person otherwise
innocent but standing in a responsible relation to a public danger."
*Berry v Michigan Racing Comm'r,* n 12 *supra* at 169, citing *Dotter-
weich, supra.*

fine an act to make it criminal without defining the actor's knowledge as an element of the offense.

IV

MCL 750.227c; MSA 28.424(3) provides:

(1) Except as otherwise permitted by law, a person shall not transport or possess in or upon a sailboat or a motor vehicle, aircraft, motorboat, or any other vehicle propelled by mechanical means, a firearm, other than a pistol, which is loaded.

(2) A person who violates this section is guilty of a misdemeanor, punishable by imprisonment for not more than 2 years, or a fine of not more than $2,500.00, or both.

(3) This section does not apply to a person who violates section 10(1)(g) of chapter II of Act No. 286 of the Public Acts of 1929, as amended, being section 312.10 of the Michigan Compiled Laws.

MCL 750.2; MSA 28.192 also provides:

The rule that a penal statute is to be strictly construed shall not apply to this act or any of the provisions thereof. All provisions of this act shall be construed according to the fair import of their terms, to promote justice and to effect the objects of the law.

See also *People v Hill,* 433 Mich 464, 473; 446 NW2d 140 (1989). Transporting or possessing a loaded firearm in a vehicle was not a crime at common law. It is a statutory creation, not *mala in se* but, rather, *mala prohibitum.* We therefore examine the statute's legislative history[14] to deter-

---

[14] LaFave & Scott, *supra,* § 3.8, pp 244-245, in their treatise on Criminal Law, summarize a number of factors courts have considered important in interpreting statutes empty of words denoting fault, among them, (1) the statute's legislative history or its title, (2)

mine whether the Legislature intended to hold violators liable regardless of what they knew or did not know and conclude that the statute's legislative history evidences an intent to protect the public by regulatory sanction.

MCL 750.227c; MSA 28.424(3) was enacted by the Legislature as part of 1981 PA 103. In addition to adding § 227c, 1981 PA 103 added § 227d.[15] Under § 227c, it is a misdemeanor to possess or transport a loaded firearm, other than a pistol, in a motor vehicle. It subjects the violator to up to two years' imprisonment or a fine of $2,500, or both. Section 227d prohibits transporting or possessing a firearm, other than a pistol, in a motor vehicle unless it is unloaded and "is 1 or more of the following: (a) Taken down. (b) Enclosed in a case. (c) Carried in the trunk of the vehicle. (d) Inaccessible from the interior of the vehicle." Violation of this section is a misdemeanor and subjects the violator to not more than ninety days' imprisonment, or a fine of not more than $100, or both.

The statute was introduced to the Michigan House of Representatives as HB 4688 on May 14, 1981. 1981 Journal of the House 1250. It was amended on June 29, 1981, to add subsection 3, making the statute inapplicable to a person who violated then existing MCL 312.10(1)(g); MSA 13.1339(1)(g).[16] This amendment was suggested dur-

guidance to interpretation provided by other statutes, (3) the severity of the punishment provided, (4) the severity of potential harm to the public, (5) the opportunity to ascertain the true facts, and (6) the difficulty encountered by prosecuting officials in proving a mental state.

[15] 1981 PA 103 also amended MCL 750.231; MSA 28.428, regarding persons authorized to carry concealed weapons.

[16] MCL 312.10; MSA 13.1339 was repealed by 1988 PA 256. Section (1)(g) now appears as MCL 750.227c; MSA 28.424(3). Subsection (1)(h) regarding safe transportation of firearms now appears as MCL 750.227d; MSA 28.424(4) and also in MCL 300.262(2); MSA 13.1262(2).

ing the Senate Judiciary Committee meeting. See Senate Judiciary Committee Meeting Minutes— June 17, 1981. At the time of the Senate Judiciary Committee amendment to 1981 PA 103, MCL 312.10(1)(g); MSA 13.1339(1)(g) provided:

> Unless otherwise specified, a person shall not do any of the following:
>
> * * *
>
> Transport, or have in possession, in or upon an automobile, aircraft, motorboat, sailboat, or any other vehicle propelled by mechanical means, while in an area frequented by wild birds and wild animals, a gun or other firearm, except a pistol or revolver, unless the gun or firearm is unloaded in both the barrel and magazine; or a bow, unless it is unstrung.

According to the House Legislative Analysis of HB 4688, June 3, 1981, and Corrected Analysis, February 10, 1982, MCL 312.10(1)(g); MSA 13.1339(1)(g) had itself been amended to add "while in an area frequented by wild birds and wild animals" as a result of court decisions holding enforcement of this provision unconstitutional in nonwildlife areas. Because MCL 312.10(1)(g); MSA 13.1339(1)(g) now applied only in wildlife areas, HB 4688 was necessary to correct "a loophole in the law."[17] Minutes, House Committee on Judiciary, June 2, 1981.

MCL 300.262(2); MSA 13.1262(2) is not limited to wildlife areas as its predecessor, subsection (1)(h), was.

[17] A memorandum from Robert M. Faulkner, Legal Counsel of the Legislative Service Bureau, acknowledged the gap in the existing statutes. On May 21, 1981, he wrote:

> The section of the penal code concerning concealed weapons (MCL 750.227 [MSA 28.424]) has been adjudicated as not applying to rifles and shotguns generally. . . .
> Section 226 pertains to carrying a firearm with "unlawful intent." A person could be prosecuted under this section for carrying a firearm in a motor vehicle if the unlawful intent

The analysis of HB 4688 described the bill as follows:

> The proposed language closely parallels the analogous sections of the Game Law except that the penalty for carrying a *loaded* rifle or shotgun is more severe—two years' imprisonment and $2,500, rather than $100 and ninety days. . . .
> Pistols are excluded from the language of the proposed sections because the transportation of pistols is already regulated under the concealed weapons statute, violation of which is a felony. [Emphasis in original.]

The analysis continued by stating the arguments for the bill.

> The bill is needed if police agencies are to have statutory authority to regulate the transportation of firearms in urban areas as they have done in the past. There has been no real dispute about the appropriateness of forbidding the transportation of loaded or ready-for-use rifles and shotguns. *The dangers of permitting such transportation are obvious.* The present problems arise only from the impropriety of using the Game Law in areas where no hunting is done. While largely replicating the language of the Game Law, these amendments to the Penal Code can be said to be an improvement over that law in that they recognize a distinction between transporting a loaded gun and transporting one which is only readily available to be loaded and fired. The first of these offenses, while remaining a misdemeanor, could be punished more severely than the second. [Emphasis added.]

element can be established. *This additional element is extremely difficult to prove and is not a factor in your legislation.* Therefore, this section of law serves a different purpose from your legislation. [Emphasis added.]

Thus, contrary to the Court of Appeals view that
§ 227c was the counterpart of the concealed weap-
ons statute, MCL 750.227; MSA 28.424, § 227c's
true counterpart was the earlier provision under
the game laws, MCL 312.10(1)(g); MSA 13.1339(1)(g).
Moreover, the legislative materials do not men-
tion a *scienter* element. In fact, the statute ap-
pears to have been enacted to protect the public
from those who carry loaded firearms.

When viewed together with § 227d, the Legisla-
ture's concern for the public safety becomes obvi-
ous. Under § 227d, firearms must not only be
unloaded, but must also be taken down, in a case
in the trunk, or not readily accessible. Thus, the
Legislature sought to protect those in and outside
the vehicle from the dangers associated with
loaded firearms. We conclude that the end sought
to be achieved by MCL 750.227c; MSA 28.424(3) is
protection of both the public and the person carry-
ing or possessing the firearm from the dangers
inherent in a loaded firearm.

Clearly, then, the Legislature intended to hold a
person liable for knowing transportation of a fire-
arm that is in fact loaded, irrespective of whether
the individual actually knew the fact that it is his
duty to ascertain. A contrary interpretation would
undermine the responsibility to determine that the
firearm is unloaded, thus increasing the fortuity
that "an errant child, or companion, or other
person," *post*, p 201, would have access to the
firearm. The duty imposed by the statute is the
duty to protect the public safety by guarding
against the fortuity of accidental or intentional
discharge. The person who transports a firearm in
a vehicle, the person who possesses a firearm in a

vehicle, must inspect the firearm and, if loaded, must unload it.[18]

V

When sister jurisdictions have been faced with this question, they have decided the issue as we do today—where the Legislature did not require knowledge that the firearm being transported or possessed is loaded, knowledge is not an element of the offense. In *People v Dillard,* 154 Cal App 3d 261; 201 Cal Rptr 136 (1984), the California Court of Appeals held that a statute that prohibits carrying a loaded firearm in a vehicle[19] did not require knowledge that the firearm was loaded.

The court characterized the statute as "a quintessential public welfare statute . . . ." *Id.* at 266. According to the court, the legislature correctly placed the burden of avoiding harm on the person who is in the best position to avoid it.[20] The court, quoting *Morissette,* stated:

[18] A recent news story which, fortuitously, did not end tragically for the humans involved, illustrates the scope of the accidental consequences that the statutory duty guards against. On April 16, 1992, Larry Lands, Jr., age sixteen, and his father, Larry Lands, Sr., were turkey hunting in Potosi, Missouri. They shot a turkey and placed it and their loaded Beretta 12-gauge automatic shotgun into the trunk of their car. Then as Larry, Jr., described it, "we left from the place where we killed the turkey. We drove directly to [a friend's home]. I opened the trunk [and] the turkey was flopping around, the next thing the gun went off and shot my dad in the leg." Had the shotgun been unloaded, the stunned, but not dead turkey would not have had its chance to get even with the hunters, and Lands, the Elder, would not have been injured. Washington County, Missouri, Sheriff's Office, Report of Investigation, April 16, 1992.

[19] Cal Penal Code 12031, provides in pertinent part: "[E]very person who carries a loaded firearm on his or her person or in a vehicle while in any public place or on any public street . . . is guilty of a misdemeanor."

[20] The court examined the statute's legislative history to discern the intent of its legislature in enacting the statute. California's legislature had declared the act " 'necessary for the immediate preservation of the public peace, health or safety.' " 154 Cal App 3d 266. The court noted that the "Legislature [had] cited the danger to the peace and safety of the people of this state from the increased incidence of

To avoid the sanction of the law, appellant need only have taken care to make certain that the weapon he carried was in fact unloaded—"no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities." [*Dillard* at 267.]

The California Court of Appeals also addressed the mistake of fact defense that the defendant had attempted to use at trial. It said that since knowledge that the gun was loaded was not an element of the offense, mistake of fact regarding the firearm's condition was not a defense. Moreover, the court, in dictum, noted that the defendant had not attempted to show that he had made an effort to determine whether the firearm was loaded or not. "A mere belief, unsupported by a showing of due care and bona fide, reasonable effort to ascertain the facts, is insufficient to constitute a mistake of fact defense." *Id.* The court did, however, state that if the defendant did not know that he possessed the firearm, mistake with regard to that fact would be a defense. We agree with the California Court of Appeals.[21]

organized groups or individuals publicly arming themselves, and the inadequacy of existing laws to protect the people from 'either the use of such weapons or from violent incidents arising from the mere presence of such armed individuals in public places.' " *Id.*

The court also stressed the dangers of accidental discharge of a weapon. It said, if a person truly does not know that the firearm is loaded, he poses an even greater danger to the public because he does not recognize the need for care. According to the court, the person who knows that the firearm is loaded is more likely to be careful with the firearm.

[21] Similarly, the Washington Court of Appeals in *State v Anderson,* 54 Wash App 384; 773 P2d 882 (1989), held that knowledge that a firearm is loaded is not required under Washington's statute prohibiting carrying or placing a loaded pistol in any vehicle. Wash Rev Code 9.41.050(3).

Wash Rev Code 9.41.050(3) provides:

A person shall not carry or place a loaded pistol in any

VI

Whether approached with the guidance of federal courts and sister jurisdictions, the methodology of our own precedent, or the factor analysis distilled by LaFave and Scott, we conclude that knowledge that a firearm is loaded is not an element of MCL 750.227c; MSA 28.424(3).

The legislative history "throw[s] some light on the matter." LaFave & Scott, *supra,* § 3.8, p 244. The Legislature realized there was a loophole in the existing statutes. Furthermore, it realized the difficulty of proving the unlawful intent element under MCL 750.226; MSA 28.423, and noted that the proposed statute did not include that element. Finally, it realized the dangers associated with transporting a loaded firearm in a vehicle.[22]

Section 227c "promote[s] justice and . . . effect[s] the objects of the law"[23] by imposing on those who transport firearms in their vehicles the duty to ensure that those firearms are unloaded. Section 227d also does this. When these statutes are read

vehicle unless the person has a license to carry a concealed weapon and: (a) The pistol is on the licensee's person, (b) the licensee is within the vehicle at all times that the pistol is there, or (c) the licensee is away from the vehicle and the pistol is locked within the vehicle and concealed from view from outside the vehicle.

The Washington Court of Appeals relied heavily on *Dillard* in deciding that knowledge was not an element. Commentary to this statute noted that the statute did not contain a mental element. Thus, the decisions of other courts that have decided this issue bolster the decision we have reached today.

[22] The Legislature also provided guidance in another statute to assist the court in determining the Legislature's intent—MCL 750.2; MSA 28.192. Requiring the state to prove that the defendant knew that the firearm was loaded would not "effect the objects of the law." As the state argued, it would eviscerate the statute. Unless the state had a witness who actually saw a defendant loading a firearm, this knowledge would be extremely difficult to prove.

[23] MCL 750.2; MSA 28.192.

together, the intent of the Legislature is clear. The person who transports a firearm must inspect it before transporting it.

It is true that the people presented no evidence regarding who actually placed the Calico M-100 into the defendant's Toyota. However, Kevin Quinn, the driver of the car transporting the firearm, certainly had an "opportunity to ascertain the true facts." LaFave & Scott, *supra* at 244. By simply removing the clip and pulling back the slide of the Calico M-100 to ensure that it was not loaded, he was in the best position to protect against the dangers that the Legislature considered when it enacted MCL 750.227c; MSA 28.424(3). This involves " 'no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities.' " *Dillard* at 267.

Accordingly, we reverse the decision of the Court of Appeals and reinstate the defendant's conviction.

CAVANAGH, C.J., and BRICKLEY, RILEY, GRIFFIN, and MALLETT, JJ., concurred with BOYLE, J.

LEVIN, J. (*concurring in the reversal of the Court of Appeals*). The statute proscribes as a ninety-day misdemeanor transporting or possessing a loaded firearm other than a pistol in a motor vehicle.[1] It further proscribes, as a two-year misde-

_____

[1] 1981 PA 103, adding § 227d to the Penal Code:

(1) Except as otherwise permitted by law, a person shall not transport or possess in or upon a motor vehicle or any self-propelled vehicle designed for land travel a firearm, other than a pistol, unless the firearm is unloaded and is 1 or more of the following:
(a) Taken down.
(b) Enclosed in a case.
(c) Carried in the trunk of the vehicle.
(d) Inaccessible from the interior of the vehicle.

meanor, transporting or possessing a firearm, loaded or unloaded, except "[t]aken down," "[e]nclosed in a case," "[c]arried in the trunk of the vehicle," or "[i]naccessible from the interior of the vehicle."[2]

I agree with the majority that the statute imposes on a person who would so transport or possess a firearm the obligations both to so render the firearm inaccessible and to unload the firearm. Before transporting or possessing a firearm other than a pistol in a motor vehicle a citizen is thus obliged to see to it that the firearm is "taken down," or enclosed in a case, or placed in the trunk of the vehicle, or in a place inaccessible from the interior of the vehicle, and also to assure that it is unloaded.

Consistent with the statutory purpose to impose such obligations, a prima facie case of violation of the statutory proscriptions is made on evidence tending to show that the accused transported or possessed a loaded firearm in a vehicle. So far, the majority and I agree.

---

(2) A person who violates this section is guilty of a misdemeanor, punishable by imprisonment for not more than 90 days, or a fine of not more than $100.00, or both. [MCL 750.227d; MSA 28.424(4).]

[2] 1981 PA 103, adding § 227c to the Penal Code:

(1) Except as otherwise permitted by law, a person shall not transport or possess in or upon a sailboat or a motor vehicle, aircraft, motorboat, or any other vehicle propelled by mechanical means, a firearm, other than a pistol, which is loaded.

(2) A person who violates this section is guilty of a misdemeanor, punishable by imprisonment for not more than 2 years, or a fine of not more than $2,500.00, or both.

(3) This section does not apply to a person who violates section 10(1)(g) of chapter II of Act No. 286 of the Public Acts of 1929, as amended, being section 312.10 of the Michigan Compiled Laws. [MCL 750.227c; MSA 28.424(3).]

See n 5 for text of § 10(1)(g) referred to in § 227c(3).

I write separately because I would hold that knowledge that the firearm is loaded is an element of the offense. Although the prosecutor makes a prima facie case on evidence tending to show that a loaded firearm was so transported or possessed, he has the burden of establishing and persuading the trier of fact beyond a reasonable doubt that the accused not only knowingly transported or possessed the firearm but also that he did so knowing that the firearm was loaded.[3]

The law does not impose on the plaintiff, in a civil or criminal case, an impossible burden of proof. It aids the plaintiff by permitting the trier of fact to infer knowledge or scienter from evidentiary facts that reasonably permit such an inference to be drawn.[4] I would thus agree that it is reasonable to also conclude that the prosecutor makes a prima facie case of knowledge that the firearm was loaded upon adducing evidentiary facts tending to show no more than that the accused transported or possessed in a motor vehicle a loaded firearm other than a pistol, without proferring additional evidence respecting knowledge that the firearm was loaded.

On the facts of this case, this is somewhat academic. The evidence was overwhelming that Kevin Quinn, who was sentenced to serve a term of forty-five days, committed the lesser offense by transporting, loaded or unloaded, a large quantity of firearms readily accessible from the interior of the vehicle.

In another case, however, the accused might

[3] A jury finding that the accused did not ascertain that the firearm was unloaded before it was stored in the vehicle, would tend to discredit a claim that the accused did not know, when the firearm was transported or possessed, that it was loaded.

[4] See, generally, *People v Morrin,* 31 Mich App 301, 315-316; 187 NW2d 434 (1971); 9 Wigmore, Evidence (Chadbourn rev), § 2486, p 288; 2 McCormick, Evidence (4th ed), §§ 337, 342, 343, pp 427, 449-460.

offer evidence that he dutifully took the firearm apart and carefully ascertained that it was unloaded before storing it in a case in the trunk of the vehicle. In the months following, he did not recheck to determine whether the firearm was still in the case or trunk, let alone whether it was loaded. Somehow or other, an errant child, or companion, or other person, "must have" "borrowed" the firearm and returned it without the accused's knowledge to the case and the trunk loaded with a cartridge.

Unless the duty imposed by the statute requires a person to recheck the firearm to determine whether it is still unloaded *every time he enters* the vehicle, the trier of fact would, if persuaded by such an exculpatory factual recital, be justified in finding that the statute was not violated. Under the majority's construction, the judge is obliged to instruct the jury that it must find the defendant guilty even if it believes the exculpatory recital.

The trier of fact, the jury in many cases, is bright enough to see through a defense asserting lack of knowledge where such defense is unwarranted. There is no need to eliminate knowledge as an element of the offense in order to effectively enforce this legislation, which was not aimed at a problem confronting prosecutors in establishing knowledge, but rather at the absence of any legislation proscribing the carrying of loaded firearms other than pistols in motor vehicles in urban areas.[5]

---

[5] See majority *ante,* pp 191-194, discussing § 10(1)(g) of the Game Law (MCL 311.1 *et seq.;* MSA 13.1321 *et seq.,* which provided that it is a ninety-day misdemeanor to transport, or have in possession, in a motor vehicle a loaded firearm in an *area frequented by wild birds or wild animals,* and the legislative purpose to proscribe transporting or possessing loaded firearms in motor vehicles in an *urban area.* Section 10(1)(g) provides:

Unless otherwise specified, a person shall not do any of the

following:

* * *

Transport, or have in possession, in or upon an automobile, aircraft, motorboat, sailboat, or any other vehicle propelled by mechanical means, while in an area frequented by wild birds and wild animals, a gun or other firearm, except a pistol or revolver, unless the gun or firearm is unloaded in both the barrel and magazine; or a bow, unless it is unstrung. [MCL 312.10(1)(g); MSA 13.1339(1)(g).]