PEOPLE v TROTTER

Docket No. 163678. Submitted December 15, 1994, at Grand Rapids. Decided March 7, 1995, at 9:00 A.M.

Gloria L. Trotter pleaded no contest to a charge of involuntary manslaughter in the Kent Circuit Court, Dennis B. Leiber, J., after her bullterriers attacked and killed her two-year-old nephew. The defendant appealed, claiming that MCL 287.323(1); MSA 12.545(23)(1), which provides that the owner of a dangerous animal that causes the death of a person is guilty of involuntary manslaughter punishable under MCL 750.321; MSA 28.553, violates due process because no showing of criminal intent is required for conviction.

The Court of Appeals *held:*

1. Where a criminal statute is a codification of a common-law crime, and where mens rea was a necessary element of the crime at common law, the statute should not be interpreted as dispensing with mens rea as a necessary element. Instead, an element of mens rea or scienter may be read into the statute. In this case, the Legislature intended to codify a form of manslaughter when it enacted MCL 287.323(1); MSA 12.545(23) (1). Accordingly, the mens rea of involuntary manslaughter should be read into MCL 287.323(1); MSA 12.545(23)(1).

2. Where a charge of involuntary manslaughter is based on gross negligence, conviction requires proof of knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another, ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand, and the omission to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another. The facts of this case support a conviction of involuntary manslaughter based on gross negligence.

Affirmed.

REFERENCES

Am Jur 2d, Homicide § 70.

Validity and construction of statute, ordinance, or regulation applying to specific dog breeds, such as "pit bulls" or "bull terriers." 80 ALR4th 70.

HOMICIDE — INVOLUNTARY MANSLAUGHTER — DANGEROUS ANIMALS — MENS REA.

The statute that makes an owner of a dangerous animal that causes the death of a person guilty of involuntary manslaughter requires proof of the same mens rea as that required for other convictions of involuntary manslaughter (MCL 287.323[1], 750.321; MSA 12.545[23][1], 28.553).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *William A. Forsyth,* Prosecuting Attorney, *Timothy K. McMorrow,* Chief Appellate Attorney, and *T. Lynn Hopkins,* Assistant Prosecuting Attorney, for the people.

*Jeffrey P. Kirchhoff,* for the defendant on appeal.

Before: MACKENZIE, P.J., and J. W. FITZGERALD* and C. O. GRATHWOHL,** JJ.

PER CURIAM. Defendant's two-year-old nephew was attacked and killed by defendant's two bullterriers. Defendant pleaded nolo contendere to a charge of involuntary manslaughter under the dangerous animals act, MCL 287.323(1); MSA 12.545(23)(1), and was sentenced to thirty-six months' probation. She appeals as of right. We affirm.

At issue in this case is the validity of MCL 287.323(1); MSA 12.545(23)(1), which provides:

The owner of an animal that meets the definition of a dangerous animal in [MCL 287.321(a); MSA 12.545(21)(a)] that causes the death of a person is guilty of involuntary manslaughter, punishable under [MCL 750.321; MSA 28.553].

* Former Supreme Court justice, sitting on the Court of Appeals by assignment pursuant to Administrative Order No. 1994-7.

** Circuit judge, sitting on the Court of Appeals by assignment.

MCL 287.321(a); MSA 12.545(21)(a) defines "dangerous animal" as follows:

> "Dangerous animal" means a dog or other animal that bites or attacks a person, or a dog that bites or attacks and causes serious injury to another dog while the other dog is on the property or under the control of its owner. However, a dangerous animal does not include any of the following:
>
> (i) An animal that bites or attacks a person who is knowingly trespassing on the property of the animal's owner.
>
> (ii) An animal that bites or attacks a person who provokes or torments the animal.
>
> (iii) An animal that is responding in a manner that an ordinary and reasonable person would conclude was designed to protect a person if that person is engaged in a lawful activity or is the subject of an assault.
>
> (iv) Livestock.

Defendant contends that MCL 287.323(1); MSA 12.545(23)(1) violates due process because it holds the owner of a dangerous animal strictly liable for involuntary manslaughter, a felony punishable by up to fifteen years' imprisonment, without a showing of criminal intent or criminal mens rea. We disagree.

While the wisdom of excluding the element of knowledge or intent from the definition of a crime has been questioned, the United States Supreme Court has recognized as a general matter that the constitution does not preclude the enactment of even strict liability criminal statutes. *People v Quinn,* 440 Mich 178, 185; 487 NW2d 194 (1992), citing *Lambert v California,* 355 US 2251; 78 S Ct 240; 2 L Ed 2d 228 (1957). It is also well settled in Michigan that true strict liability crimes are proper under some circumstances. *Quinn, supra,* pp 188-189. Thus, where the Legislature has en-

acted a criminal statute that omits language indicating that fault is a necessary element of the crime, the proper focus is not on the constitutionality of the enactment, but rather on statutory construction and whether the Legislature, irrespective of its silence, intended to require some fault as a predicate to finding guilt. *Id.,* p 185.

Where the criminal statute is a codification of a common-law crime, and where mens rea was a necessary element of the crime at common law, courts should not interpret the statute as dispensing with mens rea as a necessary element. *Quinn, supra,* pp 185-186, citing *Morissette v United States,* 342 US 246; 72 S Ct 240; 96 L Ed 288 (1952). Instead, an element of mens rea or scienter may be read into an otherwise silent statute where the crime is one borrowed from the common law. *United States v Wulff,* 758 F2d 1121, 1124 (CA 6, 1985).

In instances where the statute in question is silent regarding scienter and does not codify a common-law offense but instead creates a "public welfare offense"—an offense punishing conduct contrary to the interest of public safety—courts should examine the intent of the Legislature to determine whether it intended scienter as an element or intended to hold the offender liable regardless of knowledge or intent. *Quinn, supra,* p 186. If the Legislature did not intend scienter as an element, the statute will be upheld if avoiding the statute's sanctions involves "no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities." *Id.,* pp 195-196, 198, quoting *People v Dillard,* 154 Cal App 3d 261; 201 Cal Rptr 136 (1984), and *Morissette, supra.* But see *People v Olson,* 181 Mich App 348; 448 NW2d 845 (1989).

In this case, we are of the opinion that, when the Legislature enacted MCL 287.323(1); MSA 12.545(23)(1) creating the offense of dangerous animal involuntary manslaughter, it intended to codify an aspect of the common-law offense of manslaughter rather than create a new public welfare offense. Accordingly, under *Quinn* and *Morissette,* the mens rea of involuntary manslaughter should be read into MCL 287.323(1); MSA 12.545(23)(1).

We reach this conclusion on the basis of the manner in which the Legislature chose to word MCL 287.323(1); MSA 12.545(23)(1). We find it particularly significant that the Legislature, in enacting the statute, specifically defined a death caused by an owner's dangerous animal as "involuntary manslaughter" punishable under the manslaughter provision of the penal code. In instances where the Legislature's intent is to create a new public welfare offense—as opposed to codifying a specific form of a common-law offense—it typically does so by defining the new offense, designating it as either a misdemeanor or a felony, and then declaring the punishment for its violation. See, e.g., MCL 257.625(4); MSA 9.2325(4) (defining the offense of operating a motor vehicle while under the influence of intoxicating liquor and causing death, declaring it "a felony," and setting punishment at no more than fifteen years' imprisonment). With regard to the dangerous animal statute, we view the Legislature's decision to define the crime by explicit reference to the offense of "involuntary manslaughter," along with its decision to make the crime punishable under the manslaughter section of the penal code, as an indication that it did not intend to create a new crime. The only reasonable inference is that, in drafting the dangerous animals provision in this manner, the Legislature intended to codify a form

of manslaughter. As such, the statute does not dispense with mens rea as an element of the offense, but instead incorporates the mens rea element of involuntary manslaughter. *Quinn, supra; Morissette, supra.* Defendant's argument therefore fails.

As a common-law offense, involuntary manslaughter is an exception to the general rule in that it does not require a vicious intent as the mens rea. *Morissette, supra,* p 251, n 8. Instead, involuntary manslaughter occurs when death results from negligence that is gross, wanton or wilful, or criminal, indicating a culpable indifference to the safety of others. *People v Rettelle,* 173 Mich App 196, 199; 433 NW2d 401 (1988). In *People v Zak,* 184 Mich App 1, 7; 457 NW2d 59 (1990), this Court, quoting *People v Orr,* 243 Mich 300, 307; 220 NW 777 (1928), stated:

> Gross negligence requires:
> 1. Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another.
> 2. Ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand.
> 3. The omission to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.

In this case, defendant's preliminary examination transcript provided the factual basis for her nolo contendere plea. That transcript established that seven or eight months before defendant's bullterriers killed her nephew, one of the dogs bit a visitor without provocation and in the presence of defendant. Defendant was therefore aware that at least one of her dogs had dangerous propensi-

ties. The district court judge, in finding gross negligence on the part of defendant, analogized leaving these dogs with a two-year-old child to leaving the boy with a loaded gun. We find this analogy compelling. Defendant's act of leaving a two-year-old with two bullterriers that had a known history of biting clearly constitutes gross negligence. Her conviction of dangerous animal involuntary manslaughter was therefore proper.

Affirmed.