# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
March 8, 2018

v

GENEKE ANTONIO LYONS,

Defendant-Appellant.

No. 334513
Wayne Circuit Court
LC No. 16-000190-01-FC

Before: TALBOT, C.J., and BECKERING and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his jury conviction of involuntary manslaughter, MCL 750.321 (under two different theories; grossly negligent performance of an act and owning a dangerous animal causing death), for which he was sentenced to five years' probation, with the first 12 months to be served in jail. We affirm defendant's conviction and sentence, but remand for correction of the judgment of sentence.

Defendant was convicted of involuntary manslaughter after his pit bulls fatally attacked four-year-old Xavier Strickland in Detroit on December 2, 2015. The prosecution presented evidence that three pit bulls ran toward Xavier and his mother, Lucille Strickland, as they were walking to Xavier's school. Three of defendant's four pit bulls had managed to escape through a small gap at the base of defendant's security fence that surrounded his yard. Lucille attempted to hold onto Xavier, but the dogs grabbed the child and dragged him back under the fence, where all four of the dogs mauled him in the yard. Police arrived, shot the dogs, and Xavier died soon thereafter from injuries sustained during the attack. A video, extracted from defendant's home surveillance cameras, showed the dogs leaving the property, Xavier and his mother walking on the street, the dogs rushing toward them, the dogs returning to the property with Xavier, and the dogs biting the child. Defendant asserted that he was not criminally liable for Xavier's death because there was insufficient evidence that he was grossly negligent or had knowledge that the dogs were dangerous.

Defendant was originally charged with second-degree murder, MCL 750.317, involuntary manslaughter, and owning a dangerous animal causing death, MCL 287.323(1). The trial court granted defendant's motion for a directed verdict on the charge of second-degree murder. The jury convicted defendant of involuntary manslaughter and owning a dangerous animal causing death. At sentencing, however, the trial court "merged" the two convictions into one conviction

-1-

of involuntary manslaughter, supported by two different theories, i.e., gross negligence in the performance of an act and owning a dangerous animal causing death.

## I. ADMISSION OF EVIDENCE

Defendant first argues that the trial court erred in admitting several crime scene photographs, a 12-minute segment of video depicting the incident, and a detective's testimony about the contents of an additional eight-minute portion of video that the trial court excluded. We disagree.

Defendant challenged the admission of the video and the detective's testimony, thereby preserving those issues. We review a trial court's decision to admit evidence for an abuse of discretion. *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *People v Lewis*, 302 Mich App 338, 341; 839 NW2d 37 (2013) (citation and quotation marks omitted). "Preliminary questions of law, such as whether a rule of evidence or statute precludes the admission of particular evidence, are reviewed de novo[.]" *Bynum*, 496 Mich at 623. Although defendant challenged the admission of several autopsy photographs below, he did not preserve his claim regarding the admission of the 73 crime scene photographs that he now challenges on appeal. To preserve an evidentiary issue for appeal, the party opposing the admission of the evidence must object at trial and specify the same grounds for the objection on appeal. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001); MRE 103(a)(1). Therefore, defendant's appellate claim relating to the crime scene photographs is unpreserved, and review of that claim is limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

The general rule is that "relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, the[] rules [of evidence], or other rules adopted by the Supreme Court" and "[e]vidence which is not relevant is not admissible." MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "A trial court admits relevant evidence to provide the trier of fact with as much useful information as possible." *People v Cameron*, 291 Mich App 599, 612; 806 NW2d 371 (2011). However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice under MRE 403. MRE 403 is not intended to exclude "damaging" evidence, because any relevant evidence will be damaging to some extent. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), mod on other grounds 450 Mich 1212 (1995) (citation and quotation marks omitted). Unfair prejudice exists where there is "a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury" or "it would be inequitable to allow the proponent of the evidence to use it." *Id*. at 75-76. In the second situation, the unfair prejudice language "refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *Cameron*, 291 Mich App 611 (citation omitted). "The '[g]ruesomeness' of a photograph standing alone is insufficient to merit its exclusion. The proper question is 'whether the probative value of the photographs is substantially outweighed by unfair prejudice.' " *People v Davis*, 320 Mich App 484, 488; 905 NW2d 482 (2017), quoting *Mills*, 450 Mich at 76.

## A. THE CRIME SCENE PHOTOGRAPHS

Defendant challenges the admission of numerous crime scene photographs, including photographs depicting blood, a child's shoe, and a dead dog. The photographs depict little graphic detail and are not overtly gruesome. Each of the photographs depicts aspects of the crime scene as found by the police. Specifically, they depict the dogs, their living conditions, different angles of the premises where the dogs lived, the security gate, street signs, dog food, and a measuring tape next to the opening in the fencing. The photographs are instructive because they aided the jury in understanding the testimony of the witnesses who explained the evidence relating to the crime scene. Several witnesses, including eyewitnesses, a crime scene services forensic technician, and police officers, referred to the photographs during their testimony. While defendant emphasizes his challenge to the admission of the few photographs depicting a child's shoe, a dead dog, and blood, a relevant photograph is not inadmissible merely because it may arouse emotion. It is apparent that these photographs were not offered simply to inflame the jury. For example, one officer explained that a photograph of "where the blood spot is" depicts where the dogs were getting out of defendant's yard and "that there's space under there." This was probative of defendant's knowledge and awareness of the dogs' ability to escape from the enclosed yard. In sum, the photographs are relevant and their probative value is not substantially outweighed by the danger of unfair prejudice. Consequently, their admission did not constitute plain error.

## B. THE 12-MINUTE VIDEO

We have also viewed the admitted 12-minute portion of the video. Although the video is disturbing, its probative value is not substantially outweighed by the danger of unfair prejudice under MRE 403. The video was highly relevant to factual issues in this case, and undoubtedly assisted the jury in comprehending the circumstances of this incident and evaluating witness credibility. In addition to providing the jury with evidence of what actually occurred, the video was instructive in depicting the ability of the dogs to easily leave the fenced-in area, roam the street, and return under the fence with the child. This evidence was relevant to whether defendant was grossly negligent in securing the dogs. The video is also instructive because it shows how the dogs rushed down the street toward Xavier and his mother as they moved to the other side of the street, and how the dogs grabbed and attacked Xavier without any provocation. The video further served as corroboration of eyewitnesses' testimony concerning what they observed and their own actions during the incident.

Contrary to defendant's suggestion, otherwise admissible evidence is not inadmissible merely because he did not dispute the cause of death or because a witness could have orally testified about the information captured by the video. See *Mills*, 450 Mich at 71, 76-77. The trial court clearly weighed the probative value of the video against the danger of unfair prejudice. To avoid the potential for any unfair prejudice, the trial court allowed only the first 12 minutes of the video, illustrating those facts discussed earlier, but excluded, over the prosecutor's objection, the last eight minutes because of its graphic nature, which included images of Xavier being "continually mauled" and "ripped apart" by the dogs.

In sum, the record discloses that the trial court endeavored to judiciously balance the probative value of the evidence against its prejudicial effect. Its decision to admit a limited

portion of the video, which was relevant to material issues at trial, but to exclude the remaining portion, which was more prejudicial and less probative, was within the range of reasonable and principled outcomes. Accordingly, the trial court did not abuse its discretion by admitting the video.

### C. THE TESTIMONY REGARDING THE EXCLUDED PORTION OF VIDEO

We also reject defendant's last evidentiary claim that a detective should not have been allowed to testify about the contents of the excluded portion of video. During the prosecutor's direct examination of the detective, the following exchange occurred:

> *Q*. Do you know how much longer the mauling continued approximately?
>
> *A*. Yes, I do.
>
> *Q*. Approximately how much longer did the mauling continue?
>
> *A*. Eight more minutes.
>
> *Q*. Now, in the video does it show the police arriving?
>
> *A*. Yes, it does.
>
> *Q*. And does it show Sergeant Wright shooting the dogs to some extent?
>
> *A*. Yes, it does.
>
> * * *
>
> *Q*. Does it also depict the witness, Ms. Williams, coming up to the gate as she testified?
>
> *A*. Yes, it does.
>
> *Q*. Does it depict dogs coming towards the fence as she testified?
>
> *A*. Yes, it does.

Other than merely relying on the trial court's decision to exclude the showing of the last eight minutes of the video, defendant provides no argument or authority that the detective was not allowed to verbally describe its content. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Moreover, as the trial court stated, it excluded the last eight minutes "so that the jury didn't have to be exposed to the continual mauling of the child." (Emphasis added.) The detective's testimony that the mauling lasted an additional eight minutes, that the police arrived and shot the dogs, and that a witness approached the fence was not inconsistent with the trial court's ruling and not improper. Consequently, this evidentiary claim must fail.

## II. JURY INSTRUCTIONS

Next, defendant argues that his manslaughter conviction should be reversed because the trial court erroneously instructed the jury on the two charges of involuntary manslaughter and owning a dangerous animal causing death. We disagree.

Claims of instructional error are reviewed de novo. *People v McMullan*, 284 Mich App 149, 152; 771 NW2d 810 (2009). Due process requires that the trial court "properly instruct the jury so that it may correctly and intelligently decide the case." *People v Clark*, 453 Mich 572, 583; 556 NW2d 820 (1996) (citations omitted). Jury instructions are reviewed in their entirety to determine whether any error requiring reversal occurred. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). A defendant is entitled to have the jury decide his guilt or innocence after considering every essential element of the charged offense. *Id.* An imperfect instruction will not, however, warrant reversal if the instructions, examined as a whole, fairly presented the issues to be tried and sufficiently protected the defendant's rights. *Id.* at 501-502.

## A. INVOLUNTARY MANSLAUGHTER

Under the theory of involuntary manslaughter advanced by the prosecution, it was necessary to show that defendant committed a specific lawful act in a grossly negligent manner that caused the death of another person. *People v Holtschlag*, 471 Mich 1, 17; 684 NW2d 730 (2004); M Crim JI 16.10; M Crim JI 16.18. In its final jury instructions, the trial court instructed the jury in accordance with the standard instruction for involuntary manslaughter, M Crim JI 16.10, but did not read the language in paragraph (5), which defendant had requested. The standard instruction provides:

> (1) [The defendant is charged with the crime of _____ / You may also consider the lesser charge of] involuntary manslaughter. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> (2) First, that the defendant caused the death of [*name deceased*], that is, that [*name deceased*] died as a result of [*state alleged act causing death*].
>
> [*Use (3) when gross negligence is alleged*:]
>
> (3) Second, in doing the act that caused [*name deceased*]'s death, the defendant acted in a grossly negligent manner.
>
> * * *
>
> [(5) Third, that the defendant caused the death without lawful excuse or justification.] [M Crim JI 16.10(1), (2), (3), and (5) (footnotes omitted).]

The brackets around paragraph (5) denote that the language is not always applicable, and the use notes provide that the language "may be omitted if there is no evidence of excuse or justification." Defendant proposes that the theory of excuse was applicable because the incident was "nothing more than an accident." In criminal law, an excuse arises because a defendant "is

not blameworthy for having acted in a way that would otherwise be criminal"; the "following defenses are the traditional excuses: duress, entrapment, infancy, insanity and involuntary intoxication." *Black's Law Dictionary* (10th ed). There is no evidence that any of these defenses were applicable to defendant's conduct of securing his dogs. Further, the instructions on involuntary manslaughter, which included instructions on gross negligence, fairly presented the issues to be tried and sufficiently protected defendant's rights. Consequently, the trial court did not err by omitting the language in paragraph (5) when instructing the jury on the offense of involuntary manslaughter.

### B. OWNER OF A DANGEROUS ANIMAL CAUSING DEATH

The dangerous animals statute, MCL 287.323(1), provides that the "owner of an animal *that meets the definition of a dangerous animal* in [MCL 287.321(a)] that causes the death of a person is guilty of involuntary manslaughter, punishable under [MCL 750.321]." (Emphasis added.) MCL 287.321(a) defines "dangerous animal," in relevant part, as

a dog or other animal that bites or attacks a person, or a dog that bites or attacks and causes serious injury or death to another dog while the other dog is on the property or under the control of its owner. However, a dangerous animal does not include any of the following:

*(i)* An animal that bites or attacks a person who is knowingly trespassing on the property of the animal's owner.

*(ii)* An animal that bites or attacks a person who provokes or torments the animal.

*(iii)* An animal that is responding in a manner that an ordinary and reasonable person would conclude was designed to protect a person if that person is engaged in a lawful activity or is the subject of an assault.

*(iv)* Livestock. [MCL 287.321(a)(*i*), (a)(*ii*), (a)(*iii*), and (a)(*iv*).]

In its final instructions, the trial court gave an instruction derived from the statute, and it also instructed the jury in accordance with the standard instruction for gross negligence, M Crim JI 16.18.[1] Defendant argues that the trial court's instructions were erroneous because they did not include his requested language that he knew *before the attack* that his dogs met the definition of "dangerous animal." We agree.

In *People v Ridge*, 319 Mich App 393; 901 NW2d 406 (2017), this Court discussed this Court's previous decision in *People v Janes*, 302 Mich App 34; 836 NW2d 883 (2013),

---

[1] This Court has held that in order to establish a violation of MCL 287.323(1), the prosecution must prove that the defendant's gross negligence in handling the animal caused the victim's death. See *People v Trotter*, 209 Mich App 244, 248-249; 530 NW2d 516 (1995).

regarding the definition of "dangerous animal" within the meaning of the dangerous animal statute.[2] In *Janes*, this Court held that "the statute requires proof that the owner knew that his or her animal was a dangerous animal within the meaning of the dangerous animal statute before the incident at issue." *Id.* at 38. The Court explained that "the Legislature's decision to limit an owner's liability to situations in which an animal 'that meets' the definition of a dangerous animal 'attacks' a person means that the prosecution must prove, in relevant part, that the animal has previously bitten or attacked a person." *Id.* at 51. More recently, relying on *Janes*, this Court in *Ridge* held that the prosecution must prove that "before the attack," the animal previously bit or attacked a person to prove that the animal meets the definition of a dangerous animal. *Id.* at 404-405. Based on these decisions, the trial court erred by failing to instruct the jury that the prosecution was required to prove that defendant *knew* prior to the attack on Xavier that his dogs were dangerous animals within the meaning of the statute.

We further conclude that the instructional error was not harmless as it relates to the original charge of owning a dangerous animal causing death. See *People v Lyles*, 501 Mich 107, 117-118; 905 NW2d 199 (2017) (holding that an erroneous jury instruction is reviewed for harmless error). An error is presumed to be harmless, and defendant bears the burden of proving otherwise. MCL 769.26; *People v Lukity*, 460 Mich 484, 493-495; 596 NW2d 607 (1999). This Court will only reverse if, " 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." *Id.* at 495-496, quoting MCL 769.26. While there was ample evidence that defendant knew that his dogs had previously left the premises, defendant denied having prior knowledge that the dogs had ever bitten or attacked anyone, and the evidence did not clearly show that defendant had such knowledge. Lucille Strickland testified that defendant's dogs had previously attacked her 12-year-old daughter, but she admitted that she did not tell anyone about this incident. Yolanda Samuels testified that the dogs had previously "gone after" her sons, but she said the dogs did not harm them; they were playful. Samuels also stated that she never contacted defendant about the dogs, or notify the police or animal control about the incident with her sons. Other witnesses testified that they had seen defendant's dogs outside the yard, but the witnesses did not claim that they had ever seen the dogs bite or attack anyone, and they did not contact defendant about the dogs. In light of this record, the reliability of defendant's conviction for owning a dangerous animal causing death is undermined by the trial court's failure to instruct the jury that a conviction under that statute "requires proof that the owner knew that his or her animal was a dangerous animal within the meaning of the dangerous animal statute before the incident at issue." *Janes*, 302 Mich App at 38. Therefore, it does not affirmatively appear that the instructional error was harmless with respect to the dangerous animal causing death charge.

However, the error does not require reversal of defendant's involuntary manslaughter conviction. The jury convicted defendant of two separate charges, involuntary manslaughter

---

[2] Although, as plaintiff observes, both *Ridge* and *Janes* involve prosecutions for owning a dangerous animal that caused a serious injury under § 323(2), as opposed to a prosecution for owning a dangerous animal that caused a death under § 323(1), both require that the animal "meets the definition of a dangerous animal in [MCL 287.321(a)]," which is at issue here.

based on negligent performance of an act, and owning a dangerous animal causing death. The trial court "merged" the two convictions into one count of involuntary manslaughter, under two separate theories—grossly negligent performance of an act and owning a dangerous animal causing death. The judgment of sentence lists defendant's conviction as "Involuntary Manslaughter (Under 2 theories)." Because defendant's involuntary manslaughter conviction is supported by two different theories, and the error relating to the dangerous animal causing death theory does not affect the theory based on gross negligence in the performance of an act, reversal of the manslaughter conviction is not required. Under these circumstances, the appropriate remedy is to remand for correction of defendant's judgment of sentence to reflect that defendant's involuntary manslaughter conviction stands, but is supported by only one theory—gross negligence in the performance of an act.

Affirmed, but remanded for correction of the judgment of sentence consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Jane M. Beckering
/s/ Thomas C. Cameron